# 23-7971(L)

## 24-1258(CON)

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

—against—

JERLAINE LITTLE, AKA, NONI, DARON GOODMAN, AKA, SEALED DEFENDANT 1, ALBERT SHOULDERS, AKA BUNDY, DARNELL COOPER, AKA JEEZ, JOSE

(*Caption continued on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX

DANIELLE R. SASSOON
PETER J. DAVIS
ASSISTANT U.S. ATTORNEYS
UNITED STATES ATTORNEY'S OFFICE
FOR THE SOUTHERN DISTRICT
OF NEW YORK
26 Federal Plaza, 37th Floor
New York, New York 10007
(212) 637-1038

*Attorneys for Appellee*
*United States of America*

STEPHANIE M. CARVLIN
LAW OFFICE OF STEPHANIE CARVLIN
71 Hudson Street, Suite 5
New York, New York 10013
(917) 549-0873

*Attorneys for Defendant-Appellant*
*Jamarr Simmons*

ELIZABETH LATIF
LAW OFFICES OF
ELIZABETH A. LATIF PLLC
1022 Boulevard, Suite 272
West Hartford, Connecticut 06119
(860) 996-1723

*Attorneys for Defendant-Appellant*
*Willie Evans*

RODRIGUEZ, AKA, MESO, MARKELL BOBIAN, AKA KELLZ, JAVARIS JENKINS, AKA, JAYBZ, MARCUS AYALA, AUGUSTUS INGRAM, AKA ELEVATOR, RANELL SLOAN, AKA RAH, SYLVESTER WINT, AKA VESTA, TIMOTHY COLEMAN, TYRONE ERVIN, AKA, SHOOTA, SEAN GAMBRELL, KASH, SHAMARE REID, AKA, SHA, MARKQUEL SIMMONS, AKA, SHELLZ, TYRIQUE SNOWDEN, ROBERT BALEY, DEAD EYE, QUAVEON ROSS, BULLET, YONETTE RESPASS, AKA, YONETTE PESPASS, AKA, YONETTE DAVIS, STAR BRIM,

*Defendants,*

JAMARR SIMMONS, AKA SEALED DEFENDANT 2, WILLIE EVANS AKA MILLS,

*Defendant-Appellant.*

## TABLE OF CONTENTS

PAGE

Docket Entries . . . . . . A-1

Plea Agreement, dated July 14, 2023 . . . . . . A-22

Superseding Information, dated July 18, 2023 . . . . . . A-31

Waiver of Indictment, dated July 18, 2023 . . . . . . A-38

Transcript of Plea, dated July 18, 2023 . . . . . . A-39

Defendant Willie Evans's Sentencing Memorandum, dated April 22, 2024 . . . . . . A-58

Government's Sentencing Memorandum, dated April 26, 2024 . . . . . . A-110

Transcript of Sentencing, dated April 30, 2024 . . . . . . A-119

Judgment Appealed From, dated April 30, 2024 . . . . . . A-140

Defendant Willie Evans's Notice of Appeal, dated May 3, 2024 . . . . . . A-148

**Query** **Reports** **Utilities** **Help** **Log Out**

CLOSED,APPEAL,PRIOR

## U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:20-cr-00057-GBD-3

Case title: USA v. Goodman

Date Filed: 01/22/2020

Date Terminated: 05/01/2024

---

Assigned to: Judge George B. Daniels

**Defendant (3)**

**Willie Evans**
*TERMINATED: 05/01/2024*
*also known as*
Mills
*TERMINATED: 05/01/2024*

represented by

**Bruce D. Koffsky**
Koffsky & Felsen, LLC
1261 Post Rd
Ste 202b
Fairfield, CT 06824
203-327-1500
Fax: 203-327-7660
Email: bkoffsky@snet.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**David C. Esseks**
Allen & Overy, LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300 x344-6694
Fax: (212) 610-6399
Email: david.esseks@aoshearman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Eugene Edward Ingoglia**
Allen & Overy, LLP
1221 Avenue of the Americas
New York, NY 10020
212-610-6300
Fax: 212-610-6399
Email: eugene.ingoglia@aoshearman.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Natali J.H. Todd**
Law Office of Natali J.H. Todd P.C.
26 Court Street,
Suite 413
Brooklyn, NY 11242
718-797-3055
Fax: 718-504-3900
Email: natali_todd@yahoo.com
*TERMINATED: 04/25/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:1962-7480.F RACKETEERING CONSPIRACY (1s) | IMPRISONMENT: Twenty (20) years for Count 1 and ten (10) years for Count 2, to be served concurrently. SUPERVISED RELEASE: Three (3) years. |
| 18:1959-7474.F CONSPIRACY, ATTEMPT TO MURDER (2s) | IMPRISONMENT: Twenty (20) years for Count 1 and ten (10) years for Count 2, to be served concurrently. SUPERVISED RELEASE: Three (3) years. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:1962-7480.F RACKETEERING CONSPIRACY (1) | Dismissed |
| 18:1959-7471.F RACKETEERING ACTIVITY, MURDER/KIDNAPPING (4) | Dismissed |
| 18:924J.F VIOLENT CRIME/DRUGS /MACHINE GUN WHERE DEATH OCCURS (5) | Dismissed |
| 21:846=ND.F CONSPIRACY TO DISTRIBUTE NARCOTICS (20) | Dismissed |
| 18:924C.FVIOLENT CRIME/DRUGS /MACHINE GUN | Dismissed |

(21)

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

---

**Coordinating Discovery Attorney**

**Julie de Almeida**

---

**Plaintiff**

**USA** represented by **Adam Sloan Hobson**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2484
Fax: 212-637-2527
Email: Adam.Hobson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Jacob Edwin Warren**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2264
Email: jacob.warren@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Michael Dayton AUSA_Longyear**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2223
Fax: 212-637-2443
Email: michael.longyear@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Peter John Davis**
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007
212-637-2468
Email: peter.davis2@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Rushmi Bhaskaran**
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2439
Email: Rushmi.Bhaskaran@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/18/2020 | 13 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden unsealing the S(3) superseding indictment. (Signed by Magistrate Judge Barbara C. Moses on 2/18/20)(jm) (Entered: 02/19/2020) |
| 02/18/2020 | 14 | (S3) SUPERSEDING INDICTMENT FILED as to Daron Goodman (1) count(s) 1s, 2s, 3s, Jamarr Simmons (2) count(s) 1s, 2s, 3s, 4s, 5s, 10s, 13s, 14s, 15s, 18s, 19s, 20s, 21s, Willie Evans (3) count(s) 1, 4, 5, 20, 21, Albert Shoulders (4) count(s) 1, 10, 20, 21, Ranell Sloan (5) count(s) 1, 20, 21, Darnell Cooper (6) count(s) 1, 20, 21, Jose Rodriguez (7) count(s) 1, 20, 21, Sylvester Wint (8) count(s) 1, 8, 9, 10, 20, 21, 22, Yonette Respass (9) count(s) 1, 10, Markell Bobian (10) count(s) 1, 18, 19, 20, 21, Timothy Coleman (11) count(s) 1, 15, Tyrone Ervin (12) count(s) 1, 13, 14, 18, 19, 20, 21, Sean Gambrell (13) count(s) 1, 13, 14, 18, 19, 20, 21, Javaris Jenkins (14) count(s) 1, 6, 7, 11, 12, 20, 21, Jerlaine Little (15) count(s) 1, 16, 17, 18, 19, 20, 21, Shamare Reid (16) count(s) 1, 8, 9, 10, 20, 21, Markquel Simmons (17) count(s) 1, 18, 19, 20, 21, Tyrique Snowden (18) count(s) 1, 20, 21, 23, 24. (jm)(Originally filed under seal on 2/12/20) (Entered: 02/19/2020) |
| 02/18/2020 | | Arrest of Willie Evans. (jm) (Entered: 02/20/2020) |
| 02/18/2020 | 39 | CJA 23 Financial Affidavit by Willie Evans appointing cja attorney Natali Todd. (Signed by Magistrate Judge Barbara C. Moses) (jm) (Entered: 02/20/2020) |
| 02/18/2020 | | Attorney update in case as to Willie Evans. Attorney Natali J.H. Todd for Willie Evans added. (jm) (Entered: 02/20/2020) |
| 02/18/2020 | 40 | Minute Entry for proceedings held before Magistrate Judge Barbara C. Moses: Defendant is present with attorney Natali Todd; AUSA Longyear is also present. Defendant is detained on consent without prejudice. Initial Appearance as to Willie |

| | | |
|---|---|---|
| | | Evans held on 2/18/2020., As to Willie Evans( Status Conference set for 2/26/2020 at 10:45 AM before Judge George B. Daniels.) (jm) (Entered: 02/20/2020) |
| 02/20/2020 | 57 | ENDORSED LETTER as to Willie Evans addressed to Judge George B. Daniels from David E. Patton dated 2/20/2020 re: Defense counsel writes to recommend the appointment of Bruce Koffsky as learned counsel. ENDORSEMENT: SO ORDERED. (Signed by Judge George B. Daniels on 2/20/2020) (ap) (Entered: 02/20/2020) |
| 02/20/2020 | 59 | NOTICE OF ATTORNEY APPEARANCE: Natali J.H. Todd appearing for Willie Evans. Appearance Type: CJA Appointment. (Todd, Natali) (Entered: 02/20/2020) |
| 02/21/2020 | 67 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden addressed to Judge George B. Daniels from Michael D. Longyear dated February 21, 2020 re: Arraignment and Initial Pretrial Conference Document filed by USA. (Longyear, Michael) (Entered: 02/21/2020) |
| 02/23/2020 | 68 | NOTICE OF ATTORNEY APPEARANCE: Bruce D. Koffsky appearing for Willie Evans. Appearance Type: CJA Appointment. (Koffsky, Bruce) (Entered: 02/23/2020) |
| 02/26/2020 | | Minute Entry for proceedings held before Judge George B. Daniels: Arraignment as to Willie Evans (3) Count 1,4,5,20,21 held on 2/26/2020. Attorney(s) present for Government: Jacob Edwin Warren, Michael Dayton Longyear. Attorney(s) present for Defendant(s): Bruce D. Koffsky, Natali J.H. Todd. Also present: Court Reporter Pamela Utter, Paralegal Specialist Hannah Harney. Notes: Defendant Willie Evans was arraigned on the S3 Superseding Indictment and entered a plea of not guilty to Counts 1, 4, 5, 20, and 21. A status conference is scheduled for June 3, 2020 at 10:30 a.m. On the Government's motion, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time. (jbo) (Entered: 02/27/2020) |
| 02/26/2020 | | Minute Entry for proceedings held before Judge George B. Daniels: Plea entered by Willie Evans (3) Count 1,4,5,20,21 Not Guilty. (jbo) (Entered: 02/27/2020) |
| 02/28/2020 | 88 | SEALED DOCUMENT placed in vault. (mhe) (Entered: 02/28/2020) |
| 03/12/2020 | 92 | ORDER APPOINTING JULIE DE ALMEIDA, ESQ. AS COORDINATING DISCOVERY ATTORNEY as to Willie Evans. It is hereby ORDERED that Julie de Almeida, Esq. is appointed as Coordinating Discovery Attorney for defense counsel. (Signed by Judge George B. Daniels on 3/12/2020)(ap) (Entered: 03/12/2020) |
| 03/17/2020 | 94 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden addressed to Judge George B. Daniels from Michael D. Longyear dated March 17, 2020 re: Proposed Protective Order Document filed by USA. (Attachments: # 1 Text of Proposed Order Protective Order)(Longyear, Michael) (Entered: 03/17/2020) |
| 03/17/2020 | 95 | PROTECTIVE ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris |

| | | |
|---|---|---|
| | | Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden...regarding procedures to be followed that shall govern the handling of confidential material..... (Signed by Judge George B. Daniels on 3/17/2020)(jbo) (Entered: 03/17/2020) |
| 03/19/2020 | 100 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden addressed to Judge George B. Daniels from Michael D. Longyear dated March 19, 2020 re: Response to Requests for Bail Document filed by USA. (Longyear, Michael) (Entered: 03/19/2020) |
| 04/14/2020 | 134 | SEALED DOCUMENT placed in vault. (dn) (Entered: 04/21/2020) |
| 06/01/2020 | 140 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden addressed to Judge George B. Daniels from Michael D. Longyear dated June 1, 2020 re: Adjournment of June 3, 2020 Conference Document filed by USA. (Longyear, Michael) (Entered: 06/01/2020) |
| 06/01/2020 | 141 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden. The status conference scheduled for June 3, 2020 is adjourned to September 10, 2020 at 10:00 am. Time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time. Time excluded from 6/1/2020 until 9/10/2020. (Status Conference set for 9/10/2020 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 6/1/2020) (ap) (Entered: 06/01/2020) |
| 08/31/2020 | 158 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden addressed to Judge George B. Daniels from Michael D. Longyear dated August 31, 2020 re: Request for 60-day Adjournment of September 10, 2020 Conference Document filed by USA. (Longyear, Michael) (Entered: 08/31/2020) |
| 09/01/2020 | 159 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden: The status conference scheduled for September 10, 2020 is adjourned to November 18, 2020 at 10:00 am. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 316l(h)(7)(A), until that time. SO ORDERED. (Status Conference set for 11/18/2020 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 9/1/2020) (lnl) (Entered: 09/01/2020) |

| | | |
|---|---|---|
| 10/16/2020 | 171 | SEALED DOCUMENT placed in vault. (jus) (Entered: 10/16/2020) |
| 10/20/2020 | 172 | NOTICE OF ATTORNEY APPEARANCE Peter John Davis appearing for USA. (Davis, Peter) (Entered: 10/20/2020) |
| 11/12/2020 | 176 | SEALED DOCUMENT placed in vault. (jus) (Entered: 11/12/2020) |
| 11/16/2020 | 177 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from AUSA Jacob Warren dated November 16, 2020 re: Status Conference Document filed by USA. (Warren, Jacob) (Entered: 11/16/2020) |
| 11/17/2020 | 178 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: The status conference scheduled for November 18, 2020 is adjourned to February 10, 2021 at 10:00 am. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h) (7)(A), until that time. Time excluded from 11/17/2020 until 2/10/2021. (Status Conference set for 2/10/2021 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 11/17/2020) (ap) (Entered: 11/17/2020) |
| 12/15/2020 | 185 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 12/15/2020) |
| 01/19/2021 | 193 | TRANSCRIPT of Proceedings as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala re: Conference held on 1/6/21 before Judge George B. Daniels. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/9/2021. Redacted Transcript Deadline set for 2/19/2021. Release of Transcript Restriction set for 4/19/2021. (McGuirk, Kelly) (Entered: 01/19/2021) |
| 01/19/2021 | 194 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala. Notice is hereby given that an official transcript of a Conference proceeding held on 1/6/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 01/19/2021) |

| | | |
|---|---|---|
| 02/01/2021 | 202 | TRANSCRIPT of Proceedings as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala re: Conference held on 1/6/21 before Judge George B. Daniels. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/22/2021. Redacted Transcript Deadline set for 3/4/2021. Release of Transcript Restriction set for 5/3/2021. (McGuirk, Kelly) (Entered: 02/01/2021) |
| 02/01/2021 | 203 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala. Notice is hereby given that an official transcript of a Conference proceeding held on 1/6/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 02/01/2021) |
| 02/04/2021 | 204 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated February 4, 2021 re: Adjournment Document filed by USA. (Davis, Peter) (Entered: 02/04/2021) |
| 02/09/2021 | 205 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: The status conference scheduled for February 10, 2021 is adjourned to May 26, 2021 at 10:00 am. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 316l(h)(7)(A), until that time. Time excluded from 2/9/2021 until 5/26/2021. (Status Conference set for 5/26/2021 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 2/8/2021) (ap) (Entered: 02/09/2021) |
| 02/10/2021 | 206 | SEALED DOCUMENT placed in vault. (jus) (Entered: 02/10/2021) |
| 02/19/2021 | 212 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. |

| | | |
|---|---|---|
| | | Daniels from Peter J. Davis dated February 19, 2021 re: AG Decision Not to Seek Death Penalty Document filed by USA. (Attachments: # 1 Exhibit AG No Seek Letter) (Davis, Peter) (Entered: 02/19/2021) |
| 02/23/2021 | 213 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 02/23/2021) |
| 03/22/2021 | 223 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 03/22/2021) |
| 03/24/2021 | 228 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 03/24/2021) |
| 03/30/2021 | 231 | SEALED DOCUMENT placed in vault. (jri) (Entered: 03/30/2021) |
| 04/08/2021 | 237 | SEALED DOCUMENT placed in vault. (jus) (Entered: 04/08/2021) |
| 05/06/2021 | 249 | SEALED DOCUMENT placed in vault. (jus) (Entered: 05/06/2021) |
| 05/14/2021 | 256 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated May 14, 2021 re: Adjournment / Pretrial Motions Schedule Document filed by USA. (Davis, Peter) (Entered: 05/14/2021) |
| 05/18/2021 | 258 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: The parties' proposed briefing schedule is GRANTED and is as follows: Defense Motions are due on or before August 2, 2021, Government Responses are due on or before September 15, 2021, Defense Replies are due on or before October 1, 2021. The status conference is adjourned from May 26, 2021 to June 30, 2021 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time. Time excluded from 5/26/2021 until 6/30/2021. (Motions due by 8/2/2021. Responses due by 9/15/2021. Replies due by 10/1/2021. Status Conference set for 6/30/2021 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 5/17/2021) (ap) (Entered: 05/18/2021) |
| 06/08/2021 | 265 | NOTICE OF ATTORNEY APPEARANCE Rushmi Bhaskaran appearing for USA. (Bhaskaran, Rushmi) (Entered: 06/08/2021) |
| 06/16/2021 | 268 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 06/16/2021) |
| 06/24/2021 | 271 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala. The status conference is adjourned from June 30, 2021 to October 6, 2021 at l 0:30 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 316l(h)(7)(A), until that time (Status Conference set for 10/6/2021 at 10:30 AM before Judge George B. Daniels.) Time excluded from |

| | | |
|---|---|---|
| | | 6/23/21 until 10/6/21. (Signed by Judge George B. Daniels on 6/23/21)(jw) (Entered: 06/24/2021) |
| 07/27/2021 | 285 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 07/27/2021) |
| 07/27/2021 | 290 | LETTER MOTION addressed to Judge George B. Daniels from Bruce D Koffsky dated July 27, 2021 re: Extend Schedule to File Motions . Document filed by Willie Evans. (Koffsky, Bruce) (Entered: 07/27/2021) |
| 07/28/2021 | 298 | MEMO ENDORSEMENT 290 LETTER MOTION addressed to Judge George B. Daniels from Bruce D Koffsky dated July 27, 2021 re: Extend Schedule to File Motions. The government's response to these motions would be extended to October 28, 2021, and any replies would be submitted by the undersigned by November 11, 2021....ENDORSEMENT...SO ORDERED (Signed by Judge George B. Daniels on 7/28/21) (jw) (Entered: 07/28/2021) |
| 07/28/2021 | | Set/Reset Deadlines/Hearings as to Willie Evans: Replies due by 11/11/2021. Government Responses due by 10/28/2021. (jw) (Entered: 07/28/2021) |
| 09/09/2021 | 324 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/09/2021) |
| 09/15/2021 | 335 | LETTER MOTION addressed to Judge George B. Daniels from Bruce Koffsky dated September 15, 2021 re: Extend Schedule to File Motions . Document filed by Willie Evans. (Koffsky, Bruce) (Entered: 09/15/2021) |
| 09/17/2021 | 341 | FIRST LETTER MOTION addressed to Judge George B. Daniels from JEFFREY P. CHARTIER, ESQ. dated September 17, 2021 re: 335 LETTER MOTION addressed to Judge George B. Daniels from Bruce Koffsky dated September 15, 2021 re: Extend Schedule to File Motions . re: Extension of time to file pretrial motions . Document filed by Sylvester Wint as to Willie Evans. (Chartier, Jeffrey) (Entered: 09/17/2021) |
| 09/20/2021 | 344 | MEMO ENDORSEMENT as to Willie Evans on 335 LETTER MOTION addressed to Judge George B. Daniels from Bruce Koffsky dated September 15, 2021 re: Extend Schedule to File Motions. ENDORSEMENT: SO ORDERED. (Motions due by 11/11/2021. Responses due by 12/16/2021. Replies due by 12/30/2021.) (Signed by Judge George B. Daniels on 9/20/2021) (lnl) (Entered: 09/20/2021) |
| 09/28/2021 | 349 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/28/2021) |
| 09/29/2021 | 351 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated September 29, 2021 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 09/29/2021) |
| 10/04/2021 | 352 | MEMO ENDORSEMENT as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala on re: 351 LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell |

| | | |
|---|---|---|
| | | Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated September 29, 2021 re: Adjournment and Speedy Trial Act. ENDORSEMENT: The status conference on October 6, 2021 is adjourned to January 5, 2022 at 10:00 a.m. (Status Conference set for 1/5/2022 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 10/4/2021) (ap) (Entered: 10/04/2021) |
| 10/05/2021 | 355 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: The status conference is adjourned from October 6, 2021 to January 5, 2022 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 (h)(7)(A), until that time. Time excluded from 10/6/2021 until 1/5/2022. (Signed by Judge George B. Daniels on 10/5/2021) (ap) (Entered: 10/05/2021) |
| 10/26/2021 | 362 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: This Court authorizes the purchase of a laptop with Criminal Justice Act ("CJA") funds in order for defendants to review the discovery materials produced by the Government in this action, and to have it delivered to the Metropolitan Detention Center ("MDC"), (ECF No. 332), under the terms ordered below. Any co-defendant in this action who is detained at the MDC may access the laptop under the following terms: 1. To facilitate review of the Government's discovery in this case, the MDC is to permit any Defendant charged under Docket 20 Crim. 57 to utilize an Internet-disabled laptop preloaded with discovery. The Office of the United States Attorney in this District is to comply with its obligations as may be established by such protocols, including uploading its discovery in this case to an Internet-disabled laptop and providing same to the MDC for all Defendants' use. The MDC and the prosecutors are to comply with this Order as expeditiously as possible. IT IS FURTHER ORDERED that no later than the conclusion of the proceedings against the Defendants in the district court, whether through dismissal of the charges against a Defendant or the sentencing of a Defendant, the Electronic Device shall be returned to the Administrative Office of the U.S. Courts if it was purchased with CJA funds. (Signed by Judge George B. Daniels on 10/26/2021) (See ORDER set forth) (ap) (Entered: 10/26/2021) |
| 11/11/2021 | 377 | MOTION for Release of Brady Materials ., MOTION to Sever Defendant . Document filed by Willie Evans. (Todd, Natali) (Entered: 11/11/2021) |
| 11/11/2021 | 378 | DECLARATION of Natali Todd in Support as to Willie Evans re: 377 MOTION for Release of Brady Materials . MOTION to Sever Defendant .. (Todd, Natali) (Entered: 11/11/2021) |

| | | |
|---|---|---|
| 11/11/2021 | 379 | MEMORANDUM in Support by Willie Evans re 377 MOTION for Release of Brady Materials . MOTION to Sever Defendant .. (Attachments: # 1 Exhibit SW Application-partial)(Todd, Natali) (Entered: 11/11/2021) |
| 11/18/2021 | 388 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 11/18/2021) |
| 12/07/2021 | 394 | LETTER by USA as to Willie Evans, Shamare Reid addressed to Judge George B. Daniels from Peter J. Davis dated December 7, 2021 re: Motions Schedule Document filed by USA. (Davis, Peter) (Entered: 12/07/2021) |
| 12/13/2021 | 399 | MEMO ENDORSEMENT as to Willie Evans, Shamare Reid on re: 394 LETTER by USA as to Willie Evans, Shamare Reid addressed to Judge George B. Daniels from Peter J. Davis dated December 7, 2021 re: Motions Schedule. ENDORSEMENT: SO ORDERED. (Responses due by 3/4/2022. Replies due by 3/14/2022) (Signed by Judge George B. Daniels on 12/13/2021) (ap) (Entered: 12/13/2021) |
| 12/30/2021 | 407 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated December 30, 2021 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 12/30/2021) |
| 01/03/2022 | 411 | MEMO ENDORSEMENT as to Daron Goodman, Jamarr Simmons, Willie Evans, Ranell Sloan, Sylvester Wint, Yonette Respass, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala on 407 LETTER addressed to Judge George B. Daniels from Peter J. Davis dated December 30, 2021 re: Adjournment and Speedy Trial Act. ENDORSEMENT: The conference scheduled for January 5, 2022 is adjourned to March 2, 2022 at 10:00 a.m. SO ORDERED. (Status Conference set for 3/2/2022 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 1/3/2022) (lnl) Modified on 2/9/2022 (lnl). (Entered: 01/03/2022) |
| 01/04/2022 | 413 | SEALED DOCUMENT placed in vault. (jus) (Entered: 01/04/2022) |
| 01/06/2022 | 414 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Ranell Sloan, Sylvester Wint, Yonette Respass, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: On the Government's motion, made with Defendants' consent, time is excluded from January 5, 2022 until March 2, 2022 in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). SO ORDERED. (Time excluded from 1/5/2022 until 3/2/2022) (Signed by Judge George B. Daniels on 1/6/2022) (lnl) (Entered: 01/06/2022) |
| 01/31/2022 | 430 | ENDORSED LETTER as to Willie Evans, Shamare Reid addressed to Judge George B. Daniels from AUSAs Rushmi Bhaskaran, Peter J. Davis, dated December 7, 2021 re: On or about November 11, 2021, defense counsel for defendants Evans and Reid filed certain motions. (ECF Nos. 376, 377.) The Government respectfully requests that the Government's oppositions be due on March 4, 2022, and any replies due on March 14, 2022. ENDORSEMENT: SO ORDERED. ( Responses due by 3/4/2022. Replies due by 3/14/2022 )(Signed by Judge George B. Daniels on 1/31/2022)(bw) (Entered: |

| | | |
|---|---|---|
| | | 01/31/2022) |
| 02/03/2022 | | *****DELETED DOCUMENT. Deleted document number 16 LETTER MOTION, as to Brandon Smith. The document was incorrectly filed in this case. (lnl)** (Entered: 02/04/2022) |
| 02/08/2022 | 438 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: The MDC is ORDERED to make available to Defendants in this case the laptop loaded with the voluminous discovery produced by the Government in accordance with this Court's October 26, 2021 Order, (ECF 362), at times when electronic discovery review is provided for inmates, if there are no other computers currently available to view the discovery materials. (Signed by Judge George B. Daniels on 2/8/2022) (ap) (Entered: 02/08/2022) |
| 02/09/2022 | 440 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 02/09/2022) |
| 02/14/2022 | 443 | SEALED DOCUMENT placed in vault. (jus) (Entered: 02/14/2022) |
| 02/15/2022 | 446 | SEALED DOCUMENT placed in vault. (jus) (Entered: 02/15/2022) |
| 02/28/2022 | 452 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated February 28, 2022 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 02/28/2022) |
| 02/28/2022 | 454 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Ranell Sloan, Sylvester Wint, Yonette Respass, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala: The status conference scheduled for March 2, 2022 as to all Defendants is adjourned to May 4, 2022 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 316I(h)(7)(A), until that time. SO ORDERED. (Status Conference set for 5/4/2022 at 10:00 AM before Judge George B. Daniels) (Time excluded from 2/28/2022 until 5/4/2022) (Signed by Judge George B. Daniels on 2/28/2022) (lnl) (Entered: 02/28/2022) |
| 04/12/2022 | 474 | LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Peter J. Davis dated April 12, 2022 re: Motions Schedule Document filed by USA. (Davis, Peter) (Entered: 04/12/2022) |
| 04/13/2022 | 476 | MEMO ENDORSEMENT as to Willie Evans on re: 474 To request an adjustment to the motions schedule to Willie Evans. The Government respectfully requests that the Government's oppositions to Evan's motions be due on May 16, 2022, and any replies due on May 23, 2022...ENDORSEMENT...SO ORDERED ( Replies due by 5/23/2022., Government's Opposition due by 5/16/2022) (Signed by Judge George B. Daniels on 4/13/22)(jw) (Entered: 04/14/2022) |
| 04/20/2022 | 482 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 04/20/2022) |

| | | |
|---|---|---|
| 04/25/2022 | 487 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated April 25, 2022 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 04/25/2022) |
| 04/25/2022 | 488 | MEMO ENDORSEMENT as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala on re: 487 Letter...ENDORSEMENT..The conference scheduled for May 4, 2022 is adjourned to July 6, 2022 at 9:45am (Status Conference set for 7/6/2022 at 09:45 AM before Judge George B. Daniels.) (Signed by Judge George B. Daniels on 4/25/22)(jw) (Main Document 488 replaced on 4/25/2022) (jw). (Entered: 04/25/2022) |
| 05/13/2022 | 492 | LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Peter J. Davis dated May 13, 2022 re: Motions Schedule Document filed by USA. (Davis, Peter) (Entered: 05/13/2022) |
| 05/16/2022 | 493 | MEMO ENDORSEMENT as to (S3 20-Cr-57-03) Willie Evans on re: 492 LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from AUSA Peter J. Davis dated May 13, 2022 re: Motions Schedule.... The Government respectfully requests that the Government's oppositions to Evans's motions be due on July 16, 2022, and any replies due on August 1, 2022. ENDORSEMENT: SO ORDERED. ( Responses due by 7/16/2022. Replies due by 8/1/2022. )(Signed by Judge George B. Daniels on 5/16/2022)(bw) (Entered: 05/16/2022) |
| 05/23/2022 | 501 | SEALED DOCUMENT placed in vault. (jus) (Entered: 05/23/2022) |
| 06/21/2022 | 511 | SEALED DOCUMENT placed in vault. (jus) (Entered: 06/21/2022) |
| 06/21/2022 | 512 | SEALED DOCUMENT placed in vault. (jus) (Entered: 06/21/2022) |
| 06/29/2022 | 520 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Peter J. Davis dated June 29, 2022 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 06/29/2022) |
| 06/29/2022 | 522 | MEMO ENDORSEMENT as to Daron Goodman, Jamarr Simmons, Willie Evans, Ranell Sloan, Sylvester Wint, Yonette Respass, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala re: 520 Letter Adjournment and Speedy Trial Act... ENDORSEMENT: The conference scheduled for July 6, 2022 is adjourned to September 14, 2022 at 10am. Time is excluded under the Speedy Trial Act. SO ORDERED. (Signed by Judge George B. Daniels on 6/29/22)(jbo) (Entered: 06/29/2022) |
| 08/04/2022 | 538 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 08/04/2022) |

| | | |
|---|---|---|
| 09/07/2022 | 553 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 09/07/2022) |
| 09/07/2022 | 554 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 09/07/2022) |
| 09/07/2022 | 555 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Rushmi Bhaskaran dated September 7, 2022 re: Adjournment Request Document filed by USA. (Bhaskaran, Rushmi) (Entered: 09/07/2022) |
| 09/08/2022 | 556 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Yonette Respass, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Augustus Ingram, Quaveon Ross, Marcus Ayala. The status conference scheduled for September 14, 2022 as to all Defendants is adjourned to November 16, 2022 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 (h)(7)(A), until that time. SO ORDERED. (Signed by Judge George B. Daniels on 9/8/22)(jbo) (Entered: 09/08/2022) |
| 09/13/2022 | 562 | SEALED DOCUMENT placed in vault. (jus) (Entered: 09/13/2022) |
| 10/04/2022 | 568 | SEALED DOCUMENT placed in vault. (js) (Entered: 10/04/2022) |
| 10/09/2022 | 574 | LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Rushmi Bhaskaran dated October 9, 2022 re: Government's Deadline to Response to Evans's Motions Document filed by USA. (Bhaskaran, Rushmi) (Entered: 10/09/2022) |
| 10/11/2022 | 575 | MEMO ENDORSEMENT as to Willie Evans on re: 574 LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Rushmi Bhaskaran dated October 9, 2022 re: Government's Deadline to Response to Evans's Motions. ENDORSEMENT: SO ORDERED. (Responses due by 12/9/2022) (Signed by Judge George B. Daniels on 10/11/12022) (ap) (Entered: 10/11/2022) |
| 11/11/2022 | 584 | LETTER by USA as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala addressed to Judge George B. Daniels from Rushmi Bhaskaran dated November 11, 2022 re: Adjournment Request Document filed by USA. (Bhaskaran, Rushmi) (Entered: 11/11/2022) |
| 11/14/2022 | 585 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala. The status conference scheduled for November 16, 2022 as to all Defendants is adjourned to January 18, 2023 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time. SO ORDERED. ( Status Conference set for 1/18/2023 at 10:00 AM before Judge George B. Daniels. )(Signed by Judge George B. Daniels on |

| | | |
|---|---|---|
| | | 11/14/2022)(bw) (Entered: 11/14/2022) |
| 12/01/2022 | 590 | LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Rushmi Bhaskaran dated December 1, 2022 re: Request to Adjourn the Government's Deadline to Respond to Defendant Evans's Pretrial Motions Document filed by USA. (Bhaskaran, Rushmi) (Entered: 12/01/2022) |
| 12/05/2022 | 591 | MEMO ENDORSEMENT as to (20-Cr-57-3) Willie Evans on re: 590 LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from AUSA Rushmi Bhaskaran dated December 1, 2022 re: Request to Adjourn the Government's Deadline to Respond to Defendant Evans's Pretrial Motions.... The Government respectfully writes to request that it be permitted to file its response to Evans's pretrial motions to sever and for Brad y materials (see ECF No. 377) on or before January 23, 2023. ENDORSEMENT: SO ORDERED. ( Responses due by 1/23/2023 )(Signed by Judge George B. Daniels on 12/5/2022)(bw) (Entered: 12/05/2022) |
| 01/12/2023 | 602 | LETTER by USA as to Daron Goodman, Willie Evans, Sylvester Wint, Yonette Respass, Javaris Jenkins, Augustus Ingram addressed to Judge George B. Daniels from Peter J, Davis dated January 12, 2023 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 01/12/2023) |
| 01/12/2023 | 603 | ORDER as to Daron Goodman et al. The status conference scheduled for January 18, 2023 as to all Defendants is adjourned to April 19, 2023 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time ( Status Conference set for 4/19/2023 at 10:00 AM before Judge George B. Daniels.) Time excluded from 1/12/23 until 4/19/23. (Signed by Judge George B. Daniels on 1/12/23)(jw) (Entered: 01/12/2023) |
| 01/23/2023 | 605 | LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Rushmi Bhaskaran dated January 23, 2023 re: Request to Adjourn Government's Deadline to Respond to Evans's Motions Document filed by USA. (Bhaskaran, Rushmi) (Entered: 01/23/2023) |
| 01/30/2023 | 607 | MEMO ENDORSEMENT as to Willie Evans on re: 605 The Government respectfully writes to request an adjournment of approximately 45 days (i.e., until March 6, 2023) of the Government's deadline to respond to defendant Evans's pretrial motions to sever and for Brady materials (see ECF No. 377)...ENDORSEMENT...SO ORDERED (Signed by Judge George B. Daniels on 1/30/23)(jw) (Entered: 01/30/2023) |
| 04/13/2023 | 631 | LETTER by USA as to Willie Evans, Yonette Respass, Augustus Ingram addressed to Judge George B. Daniels from Peter J. Davis dated April 13, 2023 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 04/13/2023) |
| 04/13/2023 | 632 | ORDER as to Daron Goodman, Jamarr Simmons, Willie Evans, Albert Shoulders, Ranell Sloan, Darnell Cooper, Jose Rodriguez, Sylvester Wint, Yonette Respass, Markell Bobian, Timothy Coleman, Tyrone Ervin, Sean Gambrell, Javaris Jenkins, Jerlaine Little, Shamare Reid, Markquel Simmons, Tyrique Snowden, Robert Baley, Augustus Ingram, Quaveon Ross, Marcus Ayala. The status conference scheduled for April 19, 2023 as to all Defendants is adjourned to June 7, 2023 at 10:00 a.m. On the Government's motion, made with Defendants' consent, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time. SO ORDERED. ( Status Conference set for 6/7/2023 at 10:00 AM before Judge |

| | | |
|---|---|---|
| | | George B. Daniels. )(Signed by Judge George B. Daniels on 4/13/2023)(bw) (Entered: 04/13/2023) |
| 04/24/2023 | 633 | LETTER MOTION addressed to Judge George B. Daniels from Natali Todd dated April 24, 2023 re: Motion to Be Relieved as Counsel . Document filed by Willie Evans. (Todd, Natali) (Entered: 04/24/2023) |
| 04/25/2023 | 634 | ORDER 633 LETTER MOTION addressed to Judge George B. Daniels from Natali Todd dated April 24, 2023 re: Motion to Be Relieved as Counsel as to Willie Evans. Defense counsel's motion to be relieved as counsel, (ECF No. 633), is GRANTED. Natali Todd, Defendant's current counsel, is relieved due to a conflict of interest. C.J.A. attorneys David Esseks and Eugene Ingoglia are hereby ordered to assume representation of Defendant in the above-captioned matter. The Clerk of Court is directed to close the open motion at ECF No. 633. (Signed by Judge George B. Daniels on 4/25/23) (jw) (Entered: 04/25/2023) |
| 04/25/2023 | | Attorney update in case as to Willie Evans. Attorney David C. Esseks,Eugene Edward Ingoglia for Willie Evans added. Attorney Natali J.H. Todd terminated (jw) (Entered: 04/25/2023) |
| 05/31/2023 | 646 | LETTER by USA as to Willie Evans, Yonette Respass, Augustus Ingram addressed to Judge George B. Daniels from Peter J. Davis dated May 31. 2023 re: Adjournment and Speedy Trial Act Document filed by USA. (Davis, Peter) (Entered: 05/31/2023) |
| 06/01/2023 | 647 | ORDER as to Willie Evans: The status conference as to Defendant Evans only will proceed as scheduled on June 7, 2023 at 10:00 a.m. SO ORDERED. (Signed by Judge George B. Daniels on 6/1/2023) (lnl) (Entered: 06/01/2023) |
| 06/07/2023 | | Minute Entry for proceedings held before Judge George B. Daniels: Status Conference as to Willie Evans held on 6/7/2023. Attorney(s) present for Government: Peter Davis, Rushmi Bhaskaran. Attorney(s) present for Defendant(s): Bruce Koffsky, Eugene Ingoglia. Also present: Defendant, Court Reporter. Notes: Criminal conference held. Pre-trial conference set for July 27, 2023, at 10:00 a.m. Upon motion from the Government, time is excluded in the interest of justice pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until that time. (Pretrial Conference set for 7/27/2023 at 10:00 AM before Judge George B. Daniels) (ap) (Entered: 06/07/2023) |
| 06/07/2023 | 654 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 06/07/2023) |
| 06/22/2023 | 664 | LETTER by USA as to Willie Evans addressed to Judge George B. Daniels from Peter J. Davis dated June 22, 2023 re: 3500 Protective Order Document filed by USA. (Attachments: # 1 Text of Proposed Order Proposed Order)(Davis, Peter) (Entered: 06/22/2023) |
| 06/26/2023 | 666 | PROTECTIVE ORDER as to (S3 20-Cr-57-03) Willie Evans...regarding procedures to be followed that shall govern the handling of confidential material. (Signed by Judge George B. Daniels on 6/26/2023)(bw) (Entered: 06/26/2023) |
| 07/06/2023 | 671 | TRANSCRIPT of Proceedings as to Willie Evans re: Conference held on 6/7/23 before Judge George B. Daniels. Court Reporter/Transcriber: Martha Martin, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 7/27/2023. Redacted Transcript Deadline set for 8/7/2023. Release of Transcript Restriction set |

| | | |
|---|---|---|
| | | for 10/4/2023. (Moya, Goretti) (Entered: 07/06/2023) |
| 07/06/2023 | 672 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Willie Evans. Notice is hereby given that an official transcript of a Conference proceeding held on 6/7/23 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Moya, Goretti) (Entered: 07/06/2023) |
| 07/13/2023 | 674 | ORDER as to Willie Evans. A hearing is set for July 18, 2023, at 2:00 p.m.ORDER 20 Crim. 57 (GBD)The status conference set for July 27, 2023, at 10:00 a.m. is hereby cancelled ( Status Conference set for 7/18/2023 at 02:00 PM before Judge George B. Daniels.) (Signed by Judge George B. Daniels on 7/13/2023)(jw) (Entered: 07/13/2023) |
| 07/18/2023 | 678 | (S7) SUPERSEDING INFORMATION (Felony) filed as to Willie Evans (3) count(s) 1s, 2s. (jm) (Entered: 07/19/2023) |
| 07/18/2023 | 679 | WAIVER OF INDICTMENT by Willie Evans. (jm) (Entered: 07/19/2023) |
| 07/18/2023 | | Minute Entry for proceedings held before Judge George B. Daniels:Arraignment as to Willie Evans (3) Count 1s,2s held on 7/18/2023. Deft. present with counsels Bruce Koffsky and Eugene Ingoglia; AUSAs Peter Davis and Rushmi Bhaskaran are also present. Plea entered by Willie Evans (3) Guilty as to Count 1s,2s., As to Willie Evans( Sentencing set for 11/15/2023 at 10:00 AM before Judge George B. Daniels.) (Court Reporter PRESENT) (jm) (Entered: 07/19/2023) |
| 08/09/2023 | 689 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 08/09/2023) |
| 08/23/2023 | 694 | TRANSCRIPT of Proceedings as to Willie Evans re: Plea held on 7/18/2023 before Judge George B. Daniels. Court Reporter/Transcriber: Sadie Herbert, (212) 805-0310, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/13/2023. Redacted Transcript Deadline set for 9/25/2023. Release of Transcript Restriction set for 11/21/2023. (McGuirk, Kelly) (Entered: 08/23/2023) |
| 08/23/2023 | 695 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Willie Evans. Notice is hereby given that an official transcript of a Plea proceeding held on 7/18/2023 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 08/23/2023) |
| 08/28/2023 | 696 | LETTER MOTION addressed to Judge George B. Daniels from Willie Evans dated 8/28/2023 . Document filed by Willie Evans. (Koffsky, Bruce) (Entered: 08/28/2023) |
| 08/29/2023 | 697 | SCHEDULING ORDER as to Willie Evans. On the Defendant's motion, made with the Government's consent, the sentencing scheduled for November 15, 2023 is adjourned to December 19, 2023, at 10:15 a.m. The Clerk of Court is directed to close the open motion at ECF No. 696. (Sentencing set for 12/19/2023 at 10:15 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 8/29/2023) (ap) |

| | | |
|---|---|---|
| | | (Entered: 08/29/2023) |
| 10/19/2023 | 714 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 10/19/2023) |
| 10/30/2023 | 717 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 10/30/2023) |
| 11/02/2023 | 720 | ORDER as to Willie Evans: The Clerk of Court is directed to close Defendant's Motion for Release of Brady Materials and Motion to Sever Defendant, (ECF No. 377), as having been mooted by Defendant's guilty plea. (Signed by Judge George B. Daniels on 11/2/2023) (ap) (Entered: 11/02/2023) |
| 11/20/2023 | 729 | LETTER MOTION addressed to Judge George B. Daniels from Eugene Ingoglia dated November 20, 2023 re: 724 Initial Disclosure Presentence Report, re: Request for Extension of Time to Submit Objections to Draft PSR . Document filed by Willie Evans. (Ingoglia, Eugene) (Entered: 11/20/2023) |
| 11/27/2023 | 731 | MEMO ENDORSEMENT 729 LETTER MOTION addressed to Judge George B. Daniels from Eugene Ingoglia dated November 20, 2023 re: 724 Initial Disclosure Presentence Report, re: Request for Extension of Time to Submit Objections to Draft PSR as to Willie Evans (3) (Signed by Judge George B. Daniels on 11/27/2023) (jw) (Entered: 11/27/2023) |
| 11/29/2023 | 736 | CONSENT LETTER MOTION addressed to Judge George B. Daniels from Eugene Ingoglia dated November 29, 2023 re: Requesting an adjournment of Mr. Evans's Sentencing Hearing for approximately sixty days . Document filed by Willie Evans. (Ingoglia, Eugene) (Entered: 11/29/2023) |
| 12/04/2023 | 737 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 12/04/2023) |
| 12/04/2023 | 738 | MEMO ENDORSEMENT granting 736 CONSENT LETTER MOTION filed by Willie Evans (3), addressed to Judge George B. Daniels from Attorney Eugene Ingoglia dated November 29, 2023 re: Requesting an adjournment of Mr. Evans's Sentencing Hearing for approximately sixty days. ENDORSEMENT: SO ORDERED. (Signed by Judge George B. Daniels on 12/4/2023) (bw) (Entered: 12/04/2023) |
| 12/04/2023 | | Terminate Deadlines and Hearings as to Willie Evans (3): Terminated Sentencing set for 12/19/2023 at 10:15 AM before Judge George B. Daniels. (bw) (Entered: 12/04/2023) |
| 01/02/2024 | 750 | ORDER as to Willie Evans: Having granted Defendant's request for a sentencing adjournment, (ECF No. 738), sentencing is hereby scheduled for February 8, 2023 at 10:00 a.m. (Sentencing set for 2/8/2024 at 10:00 AM before Judge George B. Daniels) (Signed by Judge George B. Daniels on 1/2/2024) (ap) (Entered: 01/02/2024) |
| 01/22/2024 | 759 | SEALED DOCUMENT placed in vault. (jus) (Entered: 01/22/2024) |
| 01/24/2024 | 761 | LETTER MOTION addressed to Judge George B. Daniels from Eugene Ingoglia dated January 24, 2024 re: 750 Order, Set Hearings, Terminate Motions,,, re: Adjournment of Sentencing Currently Scheduled for February 8, 2024 . Document filed by Willie Evans. (Ingoglia, Eugene) (Entered: 01/24/2024) |
| 01/25/2024 | 762 | ENDORSED LETTER as to (20-Cr-57-03) Willie Evans addressed to Judge George B. Daniels from Attorney Eugene Ingoglia dated January 24, 2024 re: We represent Willie Evans in the above-captioned matter and write to request an adjournment of Mr. Evans's sentencing hearing for approximately thirty days. ENDORSEMENT: The |

| | | |
|---|---|---|
| | | sentencing scheduled for January 31 2024 is adjourned to March 13, 2024 at 10:00 a.m. SO ORDERED: ( Sentencing set for 3/13/2024 at 10:00 AM before Judge George B. Daniels. ) (Signed by Judge George B. Daniels on 1/25/2024)(bw) (Entered: 01/25/2024) |
| 02/15/2024 | 771 | SEALED DOCUMENT placed in vault. (jus) (Entered: 02/15/2024) |
| 03/04/2024 | 774 | CONSENT LETTER MOTION addressed to Judge George B. Daniels from Eugene Ingoglia dated March 4, 2024 re: Adjournment of Sentencing . Document filed by Willie Evans. (Ingoglia, Eugene) (Entered: 03/04/2024) |
| 03/04/2024 | 775 | MEMO ENDORSEMENT 774 CONSENT LETTER MOTION addressed to Judge George B. Daniels from Eugene Ingoglia dated March 4, 2024 re: Adjournment of Sentencing as to Willie Evans....ENDORSEMENT...The sentencing is rescheduled to April 30, 2024 at 10:30am (Signed by Judge George B. Daniels on 3/4/24) (jw) (Entered: 03/04/2024) |
| 03/04/2024 | | Set/Reset Deadlines/Hearings as to Willie Evans: Sentencing set for 4/30/2024 at 10:30 AM before Judge George B. Daniels (jw) (Entered: 03/04/2024) |
| 03/05/2024 | 776 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/05/2024) |
| 03/05/2024 | 777 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/05/2024) |
| 03/05/2024 | 778 | SEALED DOCUMENT placed in vault. (jus) (Entered: 03/05/2024) |
| 03/14/2024 | 780 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 03/14/2024) |
| 04/22/2024 | 788 | SENTENCING SUBMISSION by Willie Evans. (Attachments: # 1 Exhibit A, # 2 Exhibit B (Redacted))(Ingoglia, Eugene) (Entered: 04/22/2024) |
| 04/23/2024 | 789 | LETTER by Willie Evans addressed to Judge George B. Daniels from Eugene Ingoglia dated April 23, 2024 re: Sentencing Submission (Attachments: # 1 Supplement Letter Written by Willie Evans)(Ingoglia, Eugene) (Entered: 04/23/2024) |
| 04/26/2024 | 790 | SENTENCING SUBMISSION by USA as to Willie Evans. (Davis, Peter) (Entered: 04/26/2024) |
| 04/30/2024 | | Minute Entry for proceedings held before Judge George B. Daniels: Sentencing held on 4/30/2024 for Willie Evans (3) Count 1s, 2s. Attorney(s) present for Government: Peter Davis; Rushmi Bhaskaran. Attorney(s) present for Defendant(s): Eugene Ingoglia; Bruce D. Koffsky. Also present: Defendant; Court Reporter. Notes: Defendant sentenced to 20 years' imprisonment on Count 1 and 10 years' imprisonment on Count 2, to run concurrently, and a Supervised Released term of three years. Defendant must pay a $200 special assessment fee. All open counts as to Defendant were dismissed upon the Government's motion. (bw) (Entered: 04/30/2024) |
| 04/30/2024 | | DISMISSAL OF COUNTS on Government Motion as to Willie Evans (3) Count 1,4,5,20,21. (bw) (Entered: 04/30/2024) |
| 05/01/2024 | 791 | JUDGMENT IN A CRIMINAL CASE as to Willie Evans (3). The defendant pleaded guilty to counts one (1), two (2). All open count are dismissed on the motion of the United States. IMPRISONMENT: Twenty (20) years for Count 1 and ten (10) years for Count 2, to be served concurrently. The defendant is remanded to the custody of the United States Marshal. SUPERVISED RELEASE: Three (3) years. ASSESSMENT: $200.00 due immediately. (Signed by Judge George B. Daniels on |

| | | |
|---|---|---|
| | | 4/30/2024) (lnl) (Entered: 05/01/2024) |
| 05/03/2024 | 792 | NOTICE of Change of Firm Name and Email Addresses as to Willie Evans (Ingoglia, Eugene) (Entered: 05/03/2024) |
| 05/03/2024 | 793 | NOTICE OF APPEAL by Willie Evans from 791 Judgment. Filing fee $ 605.00, receipt number 28984. (tp) (Entered: 05/03/2024) |
| 05/03/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Willie Evans to US Court of Appeals re: 793 Notice of Appeal - Final Judgment. (tp) (Entered: 05/03/2024) |
| 05/03/2024 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Willie Evans re: 793 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 05/03/2024) |
| 05/28/2024 | 795 | TRANSCRIPT of Proceedings as to Willie Evans re: Sentence held on 4/30/2024 before Judge George B. Daniels. Court Reporter/Transcriber: Nicole DIMasi, (212) 805-0320, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/18/2024. Redacted Transcript Deadline set for 6/28/2024. Release of Transcript Restriction set for 8/26/2024. (McGuirk, Kelly) (Entered: 05/28/2024) |
| 05/28/2024 | 796 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Willie Evans. Notice is hereby given that an official transcript of a Sentence proceeding held on 4/30/2024 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (McGuirk, Kelly) (Entered: 05/28/2024) |
| 06/11/2024 | 800 | SEALED DOCUMENT placed in vault. (nmo) (Entered: 06/11/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/08/2024 15:02:02 | | | |
| **PACER Login:** | elatif228 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cr-00057-GBD |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 14, 2023

**BY EMAIL**
Eugene Ingoglia
Allen & Overy LLP
1221 Avenue of the Americas
New York
NY 10020

Bruce Koffsky, Esq.
Koffsky & Felsen, LLC
1150 Bedford Street
Stamford, CT 06905

**Re: United States v. Willie Evans, a/k/a "Mills," S7 20 Cr. 57 (GBD)**

Dear Counsel:

On the understandings specified below, and subject to an allocution acceptable to the Government, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Willie Evans, a/k/a "Mills," ("the defendant") to Counts One and Two of the above-referenced Superseding Information.

Count One charges the defendant with participating in a racketeering conspiracy from in or about 2011 up to and including in or about February 2020 in violation of Title 18, United States Code, Section 1962(d). This offense carries a maximum term of imprisonment of twenty years, a maximum term of supervised release of three years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 and 1963(a) of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment.

Count Two charges the defendant with conspiring to commit an attempted murder in aid of racketeering on or about August 24, 2019 in the Bronx, New York, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 1959(a)(5) and 2. This offense carries a maximum term of imprisonment of 10 years, a maximum term of supervised release of three years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 and 1963(a) of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment.

The total maximum term of imprisonment on Counts One and Two is 30 years' imprisonment.

As part of his guilty plea to Count One, the defendant also admits to the following:

(1) The defendant was the godfather—the highest-ranking member—of the 59 Brims from in or about 2012 to when he was arrested in 2020.

(2) On January 11, 2020, Jamarr Simmons, Jason Parris, Daron Goodman, Jose Rodriguez, and Darnell Cooper were together on the sidewalk near 1437 Webster Avenue in the Bronx. A rival gang member punched Jason Parris and a fight broke out that continued into the middle of the street on Webster Avenue. While the fight was ongoing in the middle of the street, Daron Goodman fired a shot that errantly struck Jason Parris in the throat, killing Jason Parris;

(3) In the early morning hours of September 28, 2019, Jamarr Simmons and Markquel Simmons told Bradford Mensah to come to Crotona Park in the Bronx to receive gang discipline from, among others, the defendant, because Bradford Mensah had been seen hugging a former member of the 59 Brims, Jerlaine Little, who had previously been kicked out of the gang. Sometime after Mensah arrived at Crotona Park, he was shot at point blank range in the back of the head, and died.

(4) In July 2019, Jerlaine Little was kicked out of the 59 Brims over a dispute with a fellow gang member. Shortly thereafter, Little joined the Mac Baller Brims (a rival gang). The defendant ordered members of the 59 Brims to slash Little. Jamarr Simmons and Sylvester Wint discussed having Little slashed. Thereafter, members of the gang successfully slashed Little on or about August 8, 2019;

(5) On or about August 24, 2019, the defendant conspired with Wint and Reid to commit a shooting of rival gang members. Wint and Reid did commit a shooting of rival gang members. Evans, as the godfather of the 59 Brims, subsequently criticized Wint for letting himself be caught on camera: "Why y'all was walking Back & forth like that Bammy [camera] kaught ya Face Good."

(6) On March 30, 2019, Jamarr Simmons and Timothy Coleman committed a stabbing of a rival gang member outside of a bar at 145 East 149th Street in the Bronx. Surveillance video captured Coleman and Jamarr Simmons committing the stabbing;

(7) Members of the 59 Brims committed numerous robberies in the Bronx during the relevant time period for Count One; and

(8) The defendant possessed firearms and sold drugs with other members of the 59 Brims during the time period relevant to Count One.

In consideration of the defendant's plea to the above offenses, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his participating in the 59 Brims racketeering conspiracy in the Bronx, New York from in or about 2011 up to and including in or about February 2020 and his participating in an attempted murder in aid of racketeering conspiracy on or about August 24, 2019 in the Bronx, New York, it being understood that this agreement does

not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq*. In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegations with respect to Count One of the Information and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 1963: a sum of money in United States currency, representing proceeds traceable to the commission of said offense (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

The defendant further agrees to make restitution in an amount ordered by the Court in accordance with 18 U.S.C. § 3663.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

COUNT ONE

1. Pursuant to U.S.S.G. § 2E1.1(a), the Base Offense Level for Count One is the greater of 19 or the offense level applicable to the underlying racketeering activity, after applying Chapter Three, Parts A, B, C, and D, to both (a)(1) and (a)(2).

U.S.S.G. § 2E1.1(a)(1)

2. Pursuant to U.S.S.G. § 3B1.1(a), a four-level enhancement applies because the defendant was a manager or supervisor in the racketeering enterprise that involved five or more participants or was otherwise extensive. Accordingly, the base offense level under U.S.S.G. § 2E1.1(a)(1) is 23.

U.S.S.G. § 2E1.1(a)(2)

3. The underlying racketeering activity includes the following offenses:

    a. Offense One: A murder that took place in the Bronx, New York, on or about September 28, 2019;

    b. Offense Two: A robbery and an attempted murder shooting that took place in the Bronx, New York on or about May 21, 2019;

    c. Offense Three: An attempted murder stabbing that took place in the Bronx, New York on or about March 30, 2019;

    d. Offense Four: A robbery that took place in the Bronx, New York on or about

November 29, 2018; and

e. Offense Five: Conspiring to distribute cocaine base in the Bronx, New York, and elsewhere.

f. Offense Six: An attempted murder shooting that took place in the Bronx, New York on or about August 24, 2019;

4. Pursuant to U.S.S.G. § 2E1.1, application note 1, each Offense is treated as if contained in a separate count of conviction.

5. Pursuant to U.S.S.G. § 3D1.2, each underlying offense comprises its own separate group.

Offense One (September 28, 2019 Murder)

6. The Guideline applicable to murder is U.S.S.G. § 2A1.1. Pursuant to U.S.S.G. § 2A1.1(a), the base offense level is 43.

7. Accordingly, the offense level for Offense One is 43.

Offense Two (May 21, 2019 Attempted Murder)

8. The Guideline applicable to attempted murder is U.S.S.G. § 2A2.1. Pursuant to U.S.S.G. § 2A2.1(a), the base offense level is 33.

9. Accordingly, the offense level for Offense Two is 33.

Offense Three (March 30, 2019 Attempted Murder)

10. The Guideline applicable to attempted murder is U.S.S.G. § 2A2.1. Pursuant to U.S.S.G. § 2A2.1(a), the base offense level is 33.

11. Pursuant to U.S.S.G. § 2A2.1(b)(1)(B), a two-level enhancement applies because a victim suffered serious bodily injury.

12. Accordingly, the offense level for Offense Two is 35.

Offense Four (November 29, 2018 Robbery)

13. The Guideline applicable to robbery is U.S.S.G. § 2B3.1.

14. Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

15. Pursuant to U.S.S.G. § 2B3.1(b)(2)(B), a six-level enhancement applies because a firearm was used but not discharged.

16. Pursuant to U.S.S.G. § 2B3.1(b)(3)(B), a four-level enhancement applies because the victim sustained serious bodily injury.

17. Accordingly, the offense level for Offense Four is 30.

Offense Five (Narcotics Conspiracy)

18. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(5), the base offense level for the defendant's narcotics trafficking activity is 30 because the offense involved at least 280 grams but less than 840 grams of cocaine base.

19. Pursuant to U.S.S.G. § 2D1.1(b)(1), a two-level enhancement is warranted because a firearm was possessed.

20. Accordingly, the offense level for Offense Five is 32.

Offense Six (August 24, 2019 Attempted Murder)

21. The Guideline applicable to attempted murder is U.S.S.G. § 2A2.1. Pursuant to U.S.S.G. § 2A2.1(a), the base offense level is 33.

22. Accordingly, the offense level for Offense Two is 33.

Count One Combined Offense Level

23. Pursuant to U.S.S.G. § 3D1.4(a), (b), and (c), Offense One, which has the highest offense level, is counted as one Unit; Offense Three is counted as one-half unit because it is 5 to 8 levels less serious than Offense One; and Offenses Two, Four, Five, and Six are disregarded because they are nine or more levels less serious than Offense One.

24. Pursuant to U.S.S.G. § 3D1.4, because the resulting number of Units is one and a half, one offense level is added to the offense level otherwise applicable to Offense One of 43.

25. Pursuant to U.S.S.G. § 3B1.1(a), a four-level enhancement applies because the defendant was a manager or supervisor in the racketeering enterprise that involved five or more participants or was otherwise extensive.

26. In accordance with the foregoing calculations, the resulting offense level is 48.

COUNT TWO

27. Count Two charges the same attempted murder offense as accounted for in Offense Six, for which the offense level is 33, as stated above.

28. Pursuant to U.S.S.G. § 3D1.2(c), Counts One and Two are grouped together in a single Group because Count Two embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to Count One.

TOTAL OFFENSE LEVEL

29. Assuming the defendant clearly demonstrates acceptance of responsibility, to the

satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 45.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has no criminal history points and is in Criminal History Category I.

C. Sentencing Range

The Guidelines range at offense level 45 and criminal history category I would be life imprisonment; however, pursuant to U.S.S.G. § 5G1.1(a), because the high-end of that range exceeds the statutory maximum sentence of 360 months for the offenses charged in Counts One and Two in the Information, the Guidelines range becomes 360 months' imprisonment (the "Stipulated Guidelines Sentence"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 45, the applicable fine range is $50,000 to $500,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Sentence set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence other than the Stipulated Guidelines Sentence based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding whether the defendant should be sentenced at or below the Stipulated Guidelines Sentence (or such other range as the Court may determine) and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek

denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the Stipulated Guidelines Sentence, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence at or below the Stipulated Guidelines Sentence of 360 months' imprisonment and (ii) that the Government will not appeal any sentence equal to the Stipulated Guidelines Sentence. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $500,000, and the Government agrees not to appeal any fine that is greater than or equal to $50,000. The defendant also agrees not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $200. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty.

By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction or sentence, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: Peter Davis
Peter J. Davis
Rushmi Bhaskaran
Assistant United States Attorneys
(212) 637-2468 / 2439

APPROVED:

/s
Michael Longyear
Chief, Violent and Organized Crime Unit

AGREED AND CONSENTED TO:

W Evans
Willie Evans

July 18, 2023
DATE

APPROVED:

Bruce Koffsky, Esq.
Eugene Ingoglia, Esq.
Attorney for Willie Evans

July 18, 2023
DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

WILLIE EVANS,
a/k/a "Mills,"

Defendant.

**SUPERSEDING INFORMATION**

S7 20 Cr. 57 (GBD)

**COUNT ONE**
**(Racketeering Conspiracy)**

The United States Attorney charges:

THE 59 BRIMS ENTERPRISE

1. From at least in or about 2011, through at least in or about February 2020, WILLIE EVANS, a/k/a "Mills," the defendant, and others known and unknown, were members and associates of a criminal organization that operated principally in Manhattan, the Bronx, Queens, and Brooklyn, New York (the "59 Brims" or the "Enterprise"). Members and associates of the 59 Brims engaged in, among other activities, robbery, fraud, and the distribution of controlled substances.

2. The 59 Brims, including its leadership, its membership, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. The 59 Brims constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the 59 Brims. At all times relevant to this Information, the 59 Brims was engaged in, and its activities affected, interstate and foreign commerce.

3. WILLIE EVANS, a/k/a "Mills," the defendant, participated in unlawful and other activities in furtherance of the conduct of the 59 Brims' affairs.

PURPOSES OF THE 59 BRIMS

4. The purposes of the 59 Brims included the following:

a. Preserving and protecting the power, territory, and profits of the Enterprise through acts involving murder, other acts of violence, and threats of violence.

b. Promoting and enhancing the Enterprise and the activities of its members and associates.

c. Keeping victims and potential victims in fear of the Enterprise and its members and associates through acts and threats of violence.

d. Providing assistance to members and associates who committed crimes for and on behalf of the Enterprise.

e. Enriching the members and associates of the Enterprise through, among other things, robbery, bank fraud, access device fraud, wire fraud, and the distribution and sale of narcotics, including heroin, crack cocaine, and marijuana.

f. Protecting the Enterprise and its members and associates from detection and prosecution by law enforcement authorities through acts of intimidation and violence against potential witnesses to crimes committed by members of the Enterprise.

MEANS AND METHODS OF THE 59 BRIMS

5. Among the means and methods employed by the members and associates in conducting and participating in the conduct of the affairs of the 59 Brims were the following:

a. Members and associates of the Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts involving murder, to protect and expand

the Enterprise's criminal operations, and against rival gang members.

b. Members and associates of the Enterprise used threats of violence and physical violence against other members and associates of the Enterprise to enforce and maintain discipline within the Enterprise.

c. Members and associates of the Enterprise committed, conspired, attempted, and threatened to commit acts of violence, including acts involving murder and robbery against rival gang members and other individuals.

d. Members and associates of the Enterprise promoted and celebrated, in music and on social media, the criminal conduct of the Enterprise, namely narcotics distribution, acts involving violence, and the use of firearms.

e. Members and associates of the Enterprise obtained, possessed, and used firearms.

f. Members and associates of the Enterprise distributed controlled substances, including heroin, fentanyl, crack cocaine, and marijuana.

g. Members and associates of the Enterprise committed bank fraud and wire fraud by depositing checks containing false information into bank accounts controlled by members and associates of the Enterprise and transferring money from those bank accounts and committed access device fraud by using credit and debit cards belonging to others.

THE RACKETEERING CONSPIRACY

6. From at least in or about 2011, through at least in or about February 2020, in the Southern District of New York and elsewhere, WILLIE EVANS, a/k/a "Mills," the defendant, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in paragraphs 1 through 5 of this Information, namely, the 59 Brims, which

enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the 59 Brims through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

a. multiple acts involving murder, chargeable under the following provisions of state law: New York Penal Law Sections 125.25 (murder), 110.00 (attempt), 105.15 (conspiracy), and 20.00 (aiding and abetting);

b. multiple acts involving robbery, chargeable under the following provisions of state law: New York Penal Law, Sections 160.00, 160.05, 160.10, 160.15 (robbery), 105.10 (conspiracy), 110.00 (attempt), and 20.00 (aiding and abetting);

c. multiple acts indictable under Title 18, United States Code, Section 1951 (relating to Hobbs Act robbery);

d. multiple acts indictable under Title 18, United States Code, Sections 1029 (access device fraud), 1343 (wire fraud), and 1344 (bank fraud); and

e. multiple offenses involving the distribution of controlled substances, including, heroin, fentanyl, crack cocaine, and marijuana in violation of laws of the United States, namely Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), and 846, and Title 18, United States Code, Section 2.

7. It was a part of the conspiracy that WILLIE EVANS, a/k/a "Mills," the defendant, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the 59 Brims.

(Title 18, United States Code, Section 1962(d).)

**COUNT TWO**
**(Attempted Murder in Aid of Racketeering)**

The United States Attorney further charges:

8. At all times relevant to this Information, the 59 Brims, as described in paragraphs 1 through 5 of this Information, which are repeated and incorporated by reference as though fully set forth herein, including its leadership, members, and associates, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, an association in fact of individuals which was engaged in, and the activities of which affected, interstate and foreign commerce. The 59 Brims constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the 59 Brims.

9. At all times relevant to this Information, the 59 Brims, through its members and associates, engaged in racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1959(b)(1), namely, namely acts involving murder and robbery, in violation of New York Penal Law, acts indictable under Title 18, United States Code, Section 1951, acts of fraud indictable under Title 18, United States Code, Sections 1029, 1343, and 1344, and offenses involving the distribution of controlled substances, in violation of Title 21, United States Code, Sections 812, 841, and 846.

10. On or about August 24, 2019, in the Southern District of New York and elsewhere, WILLIE EVANS, a/k/a "Mills," the defendant, and others known and unknown, as consideration for the receipt of, and as consideration for a promise and agreement to pay, a thing of pecuniary

value from the 59 Brims, and for the purpose of gaining entrance to and maintaining and increasing position in the 59 Brims, an enterprise engaged in racketeering activity, as described above, knowingly attempted and conspired to murder an individual, and aided and abetted the attempted murder of two individuals, to wit, EVANS conspired with and aided and abetted two 59 Brims members in shooting rival gang members in the Bronx, New York on August 24, 2019, in violation of New York Penal Law Sections 125.25, 120.10, 120.05, 110.00 and 20.00.

(Title 18, United States Code, Sections 1959(a)(5) and 2.)

**FORFEITURE ALLEGATION**

11. As a result of committing the offense alleged in Count One of this Information, WILLIE EVANS, a/k/a "Mills," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendant acquired or maintained in violation of Title 18, United States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from the racketeering activity alleged in Count One of this Information, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense that the defendant personally obtained.

**SUBSTITUTE ASSETS PROVISION**

12. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 1963.)

DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA :

v. :

WILLIE EVANS, : S7 20 Cr. 57(GBD)

Defendant. :

- - - - - - - - - - - - - - - - - - X

The above-named defendant, who is accused of violating Title 18, United States Code, Sections 1962(d), 1959(a)(5), and 2, being advised of the nature of the charges and of his rights, hereby waives, in open Court, prosecution by indictment and consents that the proceeding may be by information instead of by indictment.

W Evans
Defendant

Camille Greenblatt
Witness

[signature]
Counsel for Defendant

Date: New York, New York
July, 18, 2023

0202

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 20 Cr. 57 (GBD)

WILLIE EVANS,

Defendant. Plea

------------------------------x

New York, N.Y.
July 18, 2023
2:00 p.m.

Before:

HON. GEORGE B. DANIELS,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
PETER DAVIS
RUSHMI BHASKARAN
Assistant United States Attorney

EUGENE INGOGLIA
BRUCE KOFFSKY
Attorneys for Defendant

(Case called)

THE DEPUTY CLERK: May the parties please rise and make their appearance, beginning with the government.

MR. DAVIS: Good afternoon, your Honor. Peter Davis and Rushmi Bhaskaran for the government.

THE COURT: Good afternoon.

MR. INGOGLIA: Good afternoon, Judge. Eugene Ingoglia for the defendant, and Bruce Koffsky.

MR. KOFFSKY: Good afternoon, your Honor.

THE COURT: Good afternoon.

Let me start with the government. What's the status from the government's perspective?

MR. DAVIS: Thank you, your Honor.

The government understands that the defendant would like to withdraw his previously entered plea of not guilty, waive indictment, and then plead guilty to a superseding information, S7 20 Cr. 57 pursuant to a plea agreement.

THE COURT: Mr. Ingoglia.

MR. INGOGLIA: That's correct, Judge.

(Defendant sworn)

MR. DAVIS: Judge, apologies, before we start, I believe the defendant still needs to sign some of the paperwork.

THE COURT: Yes, I was going to say, I need a waiver of indictment and a plea agreement signed.

MR. INGOGLIA: It's here, Judge, on our table.

MR. DAVIS: Thank you, your Honor.

THE COURT: Mr. Evans, do you understand that you are now under oath and that if you answer any of my questions falsely, your false or untrue answers may later be used against you in another prosecution for perjury or making a false statement?

Do you understand?

THE DEFENDANT: I understand, your Honor.

THE COURT: What is your full name?

THE DEFENDANT: Willie Evans.

THE COURT: How old are you, sir?

THE DEFENDANT: Thirty-one years old.

THE COURT: How far did you go in school?

THE DEFENDANT: Graduated high school.

THE COURT: Are you now or have you recently been under the care of a doctor or psychiatrist?

THE DEFENDANT: No.

THE COURT: And have you ever been treated or hospitalized for any mental illness or any type of drug or alcohol addiction?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, have you taken any drugs, medicine or pills?

THE DEFENDANT: No.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: Are you feeling well today?

THE DEFENDANT: Yes.

THE COURT: Does either counsel have any doubt as to the defendant's competence to plead?

MR. DAVIS: No, your Honor.

MR. INGOGLIA: No, Judge.

THE COURT: Your attorneys inform me that you wish to waive prosecution by indictment and plead guilty to a two-count information to be filed by the government.

Is that what you wish to do today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you had a full opportunity to discuss your case with your attorneys and to discuss the consequences of entering a plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with your attorneys and their representation of you?

THE DEFENDANT: Yes, your Honor.

THE COURT: On the basis of Mr. Evans' responses to my questions and my observations of his demeanor, I find that he is fully competent to enter an informed plea at this time.

Now, first, before I accept any plea from you, I'm going to ask you certain questions. My questions are intended

to satisfy me that you wish to plead guilty because you are fact guilty and you fully understand the consequences of waiving prosecution by indictment and pleading guilty to this information. If you do not understand any question, please stop me, and ask me or your attorneys for further explanation.

Is that clear?

THE DEFENDANT: Yes.

THE COURT: First, I'm going to explain to you certain rights you have under the Constitution and laws of the United States. You will be giving up these rights if you enter a plea of guilty. Again, please listen carefully, because at the end of my description of all of your rights, I will again ask you if you have fully understood all that I have said. Okay?

THE DEFENDANT: All right.

THE COURT: First of all, you have a right, a constitutional right to be charged by an indictment, rather than an information. An indictment would be from the grand jury after the grand jury had heard testimony and determined there's probable cause to charge you with an offense, unlike an information, which is simply a charge that's written up by the prosecutor.

Do you understand that difference?

THE DEFENDANT: Yes.

THE COURT: Now, I've been given what we commonly refer to as a waiver of prosecution by indictment. The written

waiver says that the above-named defendant, Willie Evans, who is accused of violating Title 18, Sections 1962(d), 1959(a)(5) and 2, being advised of the nature of the charges and his rights, hereby waives in open court prosecution by indictment and consents to proceeding by information instead of by indictment.

Is that your signature on this document?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that, by signing this document, you are giving up your right to be charged by an indictment and you are consenting to be charged by this information?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, have you received a copy of the information?

THE DEFENDANT: Yes.

THE COURT: And have you read it?

THE DEFENDANT: Yes, I have.

THE COURT: And did you discuss the charges in that information with your attorneys?

THE DEFENDANT: Yes, I have.

THE COURT: Do you understand that Count One of this information charges you with participating in a racketeering conspiracy in or about 2011, including in or about

February 2020?

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And Count Two charges you with conspiring to commit an attempted murder in aid of racketeering on or about August 24th, 2019 in the Bronx and aiding and abetting the same.

Do you understand that charge?

THE DEFENDANT: Yes.

THE COURT: Count One, the racketeering conspiracy carries a maximum sentence of up to 20 years' imprisonment, a period of up to three years supervised release, a fine of up to $250,000 or twice the gain or loss from the offense, and I'm also going to impose a $100 special assessment. Do you understand that that's the penalty that can be imposed on Count One?

THE DEFENDANT: Yes.

THE COURT: Count Two, separately, that offense carries a maximum term of up to ten years imprisonment, a maximum term of up to three years supervised release, again, a fine of up to $250,000 or twice the gain or loss from the offense, and again, I must impose a $100 special assessment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So therefore, the total maximum term of

imprisonment that can be imposed on Counts One and Two is up to 30 years' imprisonment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I will accept your waiver of prosecution by indictment and we will proceed on the information.

Now, even though you waive prosecution by indictment, under the Constitution and laws of the United States, you have a right to a speedy and public trial by a jury on all of the charges against you that are contained in the information.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if there were a trial, you would be presumed innocent and the government would be required to prove your guilt by competent evidence and beyond a reasonable doubt. You would not have to prove that you were innocent at trial.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if there were a trial, you would have the right to be represented by an attorney at that trial and any related proceedings. And if you could not afford an attorney, one would be provided to you free of cost.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If there were a trial, you would have a

right to see and hear all the witnesses against you, your attorneys could cross-examine those witnesses, you would have a right to have subpoenas issued or other compulsory process used to compel witnesses to testify in your defense.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if there were a trial, you would have the right to testify, if you wanted to, but no one could force you to testify if you did not want to. Further, no inference or suggestion of guilt could be drawn by the jury if you chose not to testify at the trial. You could go to trial without testifying or calling any witnesses or presenting any evidence whatsoever.

Do you fully understand?

THE DEFENDANT: Yes.

THE COURT: Do you understand each and every one of these rights that I just indicated to you?

THE DEFENDANT: Yes.

THE COURT: Do you understand that, by entering a plea of guilty today, you are giving up each and every one of these rights, that you are waiving these rights and that you will have no trial?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you can change your

mind right now and you do not have to enter this plea of guilty, if you do not want to for any reason?

Do you fully understand that?

THE DEFENDANT: Yes.

THE COURT: Now, supervised release means you will be subject to monitoring when you are released from prison and that supervision would be under terms and conditions which could lead to your reimprisonment without a jury trial if you violate any of the conditions of your release.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you further understand that, if you are a United States citizen and I accept you guilty plea, that felony conviction may deprive you of valuable civil rights, such as the right to vote, the right to hole public office, the right to serve on a jury or the right to possess any kind of firearm?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you also understand, if you are not a citizen of the United States and I accept your guilty plea, that conviction may subject you to deportation and/or deprive you of the right to apply for United States citizenship or to reenter this country?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Under current law, there are sentencing guidelines that judges must consider in determining a sentence. Have you discussed the sentencing guidelines with your attorneys?

THE DEFENDANT: Yes, I have.

THE COURT: Do you understand that, although there may be a calculation of the applicable guideline range contained in the plea agreement, this court will not be able to determine the sentencing guideline range until after the presentence report is completed by the probation department and you and the government have had a chance to challenge any of the facts reported by the probation office and its officers?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you further understand that, even after I have determined what guideline range applies in your case, I have the authority to impose a sentence that is higher or lower than the sentence calculated by the sentencing guidelines?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And do you understand that if your attorney or anyone else has attempted to estimate or predict what your sentence will be, their estimate or prediction could be wrong?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Neither your attorney or the United States Attorney can or should give you any assurance as to what your actual sentence will be because, as I just said, I cannot determine that sentence until after the presentence report is completed, I have ruled on any challenges to the report and I determine whether there's any grounds to depart up or down from the sentencing guideline range, and I must determine what is a reasonable sentence in your particular case.

Do you understand all of that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you also fully understand that, even if your sentence is different from what your attorneys or anyone else told you it might be or if it's different from what you expect, you will still be bound by the guilty plea that you are entering today, you will not be allowed to withdraw your guilty plea after the sentence, and I will sentence you on the date of sentence pursuant to the guilty plea that you have entered here today?

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, you have been given a letter plea agreement. Is that your signature on the last page of this agreement?

THE DEFENDANT: Yes, it is.

THE COURT: Did you read this agreement before you signed it?

THE DEFENDANT: Yes, I have.

THE COURT: Did you discuss the terms of this agreement with your attorney before you signed it?

THE DEFENDANT: Yes, I have.

THE COURT: Did you fully understand the agreement before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Does this letter agreement constitute the complete and total understanding of the entire agreement as entered into by you, your attorneys and the government?

THE DEFENDANT: Yes.

THE COURT: Is everything that you understand about your plea and sentence contained in this agreement?

THE DEFENDANT: Yes, it is.

THE COURT: Has anybody promised you anything that's been left out of this agreement?

THE DEFENDANT: No.

THE COURT: Has anyone forced you or threatened you to plead guilty or to enter into this agreement?

THE DEFENDANT: No.

THE COURT: Also, by one of the specific terms of the plea agreement, it indicates that you recognize, if you are not

a citizen of the United States, your guilty plea and conviction make it very likely that your removal from the United States is presumptively mandatory and, at a minimum, you will be at risk of being removed and suffering adverse immigration consequences.

Did you understand that language in the agreement?

THE DEFENDANT: Yes.

THE COURT: And also, pursuant to one of the other express terms of the agreement, you agree to waive your right to file any appeal of the conviction and sentence in this case, if the sentence imposed is within or below the stipulated guideline range contained in this agreement.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Ingoglia, do you know of any valid defenses that would prevail at trial or any reason your client should not be permitted to plead guilty?

MR. INGOGLIA: No, Judge.

THE COURT: Mr. Evans, why don't you tell me what you did in connection with these two charges that makes you guilty.

THE DEFENDANT: From around 2012 until about February 2020 in the Bronx, New York, I, along with others, agreed to participate in affairs and activities of the 59 Brims street gang. Some activities of the 59 Brims street gang include acts of violence, firearm possession and robberies.

On or about August 24th, 2019 in the Bronx, New York, I, along with others, and for the purpose of maintaining or increasing my position in the 59 Brims, conspired with others to attempt to commit the murder of rival gang members by shooting at them.

THE COURT: How do you plead to these charges; guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty because you are in fact guilty of these two charges?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Anything further on the allocution?

MR. DAVIS: Thank you, your Honor. Nothing on the allocution.

I have a couple of procedural notes for the record. And then I would like to put into the record the elements of the two offenses and a factual basis that the government would expect to prove at trial.

As to the procedural matters, just confirming that the defendant waives the public reading of the information to which he's pleading guilty to today. I imagine that's the case, but if the Court would confirm.

THE COURT: Yes.

I didn't read the information to you in detail. You have read the information and you waive its public reading?

THE DEFENDANT: Yeah, I read it.

MR. DAVIS: Second, your Honor, I just note for the record that the Court identified the appeal waiver of this plea agreement. The government would just like to identify that the appeal waiver covers any sentence issued by the Court at or below the stipulated guideline sentence, which, in this case, is the statutory maximum sentence of 30 years. And finally, your Honor, the defendant has also agreed, pursuant to this plea agreement, to make any restitution or forfeiture ordered by this court.

Turning now to the elements of both of the counts. As to Count One of the information, the government would have to prove the following elements beyond a reasonable doubt if this case were to go to trial:

First, that the enterprise alleged in the indictment existed, here, that enterprise, as the Court just heard, is the 59 Brims;

Second, that the enterprise affected interstate or foreign commerce;

Third, that the defendant was associated with or employed by the enterprise; and

Fourth, that the defendant knowingly and willfully

conspired with at least one other person to participate in the conduct or the affairs of the enterprise through a pattern of racketeering activity, that is, at least two acts of racketeering activity.

As to Count Two, the following elements would need to be proved at trial beyond a reasonable doubt:

First, the existence of an enterprise, as defined in the statute, here, again, that enterprise is the 59 Brims;

Second, that the charged enterprise engaged in or its activities affected interstate or foreign commerce;

Third, that the charged enterprise engaged in racketeering activity, as defined under Title 18, Section 1959(b)(1) and 1961(1);

Fourth, that the defendant conspired or attempted to commit murder, which crime violated state or federal law; and

Fifth, that the crime of violence was committed either as consideration for the receipt of or as consideration for a promise or agreement to pay anything of pecuniary value from the charged enterprise or for the purpose of gaining entrance to or maintaining or increasing the position in that charged enterprise.

Your Honor, the plea agreement lists a number of stipulated facts that the defendant has agreed to. I'll just highlight a few of them. If the government were to go to trial, the government would expect to prove that the defendant

was the Godfather, that is, the highest ranking member of the 59 Brims for an extended period of time. The government would also expect to prove a number of violent acts committed by the 59 Brims, including that, on or about August 24th, 2019, that the defendant conspired with Sylvester Wint and Shamare Reid to commit a shooting of rival gang members. Wint and Reid did in fact commit a shooting of rival gang members. And Evans, as the godfather of the 59 Brims, subsequently criticized Wint for letting himself be caught on camera during that shooting. The defendant has also stipulated that members of the 59 Brims committed a number of robberies in the Bronx and that the defendant possessed firearms during the time period in the information.

As to the interstate commerce element, the government can proffer that the gang sold drugs, including cocaine base, and that those narcotics came from out of state. In addition, individuals in the gang engaged in fraud, including access device fraud, wire fraud and bank fraud that affected interstate commerce.

Your Honor, may I have one moment.

THE COURT: Yes.

(Conferring)

MR. DAVIS: With that, your Honor, thank you very much.

THE COURT: Mr. Evans, because you have acknowledged

that you are guilty as charged in Count One and Count Two of this information and because you know your rights and are waiving them and because your plea is entered knowingly and voluntarily and is supported by facts contained in each of the essential elements of these two offenses, I accept your guilty plea and adjudge you guilty of Count One and Count Two of this information.

The next step will be that the probation department will prepare a presentence report to assist in your sentencing. You will be interviewed by the probation office. It's important that the information you give the probation officer be truthful, accurate and complete. The report is important in my decision as to what your sentence will be. You and your attorney and the government will have a right and opportunity to examine the report, to challenge or comment about it and to speak before I impose sentence.

We scheduled the sentence, how is November 15th at 10:00 o'clock?

MR. DAVIS: That works for the government, your Honor.

MR. INGOGLIA: That's good, Judge. Thanks.

THE COURT: Then we'll schedule sentence for that date. I will see all the parties at that time.

(Adjourned)

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

United States of America,

v.

Willie Evans,

Defendant.

Case No.: 20 Cr. 57 (GBD)

**DEFENDANT'S SENTENCING MEMORANDUM**

KOFFSKY & FELSEN LLC
Bruce D. Koffsky
1261 Post Road, Ste. 202B
Fairfield, Connecticut 06824
(203) 327-1500
bkoffsky@snet.net

ALLEN & OVERY LLP
Eugene Ingoglia
1221 Avenue of the Americas
New York, New York 10020
(212) 610-6326
eugene.ingoglia@allenovery.com

*Attorneys for Defendant Willie Evans*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .... 1

I. A SENTENCE BELOW THE STIPULATED GUIDELINES SENTENCE IS APPROPRIATE CONSIDERING THE § 3553(A) FACTORS .... 1

A. A Sentence Substantially Below the Stipulated Guidelines Range is Sufficient to Reflect the Seriousness of the Offense and to Deter Future Criminal Conduct .... 2

B. The Court Should Consider Under § 3553(A), Mr. Evans' Personal History and Characteristics .... 3

a. Mr. Evans' Upbringing .... 3

b. Mr. Evans' Friends and Family .... 4

c. Mr. Evans' Growth while Incarcerated .... 6

d. Mr. Evans' Conditions of Incarceration .... 7

C. A Sentence Substantially Below the Stipulated Guidelines Sentence is Necessary to Avoid Unwarranted Sentence Disparities .... 10

a. Sentences Received by Co-Defendants .... 10

b. Mr. Evans' Co-Defendants with Leadership Roles .... 12

c. Mr. Evans' Co-Defendants who Engaged in Violent Crimes .... 15

d. Mr. Evans' Co-Defendants who Pled to Lesser Offenses .... 17

II. THE COURT SHOULD DISREGARD THE JUDICIARY SENTENCING INFORMATION (JSIN) IN DETERMINING THE APPROPRIATE SENTENCE FOR MR. EVANS .... 18

III. THE COURT SHOULD CONSIDER THE DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE REPORT .... 20

IV. CONCLUSION .... 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Fernandez-Rodriguez v. Licon-Vitale*,
470 F. Supp. 3d 323 (S.D.N.Y. 2020)....7, 8

*Koon v. United States*,
518 U.S. 81 (1996)....1

*Pepper v. United States*,
562 U.S. 476 (2011)....1

*United States v. Booker*,
543 U.S. 220 (2005)....1

*United States v. Carty*,
264 F.3d 191 (2d Cir. 2001)....10

*United States v. Chavez*,
No. 22-cr-303 (JMF), 2024 WL 50233 (S.D.N.Y. Jan. 4, 2024)....9

*United States v. Days*,
19-cr-619 (CM) (S.D.N.Y. Apr. 29, 2021), ECF No. 35....8

*United States v. Gonzales*,
No. 18-CR.-669-13 (JPO), (S.D.N.Y. Apr. 22, 2021), ECF No. 250....8

*United States v. Lopez*,
16-cr-317-22 (PAE), 2024 WL 964593 (S.D.N.Y. Mar. 5, 2024)....9

*United States v. Rivers*,
18-CR-00192 (WFK), ECF No. 134 (E.D.N.Y. July 29, 2021)....8

**Statutes**

18 U.S.C. § 3553(a)....1, 2

18 U.S.C. § 3553(a)(1)....3

18 U.S.C. § 3553(a)(6)....10, 16

**Other Authorities**

John Annese, *Maggot-infested Meals Being Served to Inmates at Brooklyn Federal Jail, Lawyers Say*, NY Daily News (March 30, 2024, 1:38 P.M.), https://www.nydailynews.com/2024/03/30/maggot-infested-meals-being-served-inmates-at-brooklyn-federal-jail-lawyers-say/....8

Lauren del Valle, *Loaded Firearm Found in New York Federal Prison*, CNN (March 6, 2020, 6:31PM), https://www.cnn.com/2020/03/06/us/new-york-mcc-loaded-firearm-found/index.html ....7

Stephen Rex Brown, *Contraband Video Gives Rare Look at 'Disgusting' Conditions Inside Manhattan Federal Jail*, NY Daily News (April 27, 2020, 4:00AM), https://www.nydailynews.com/2020/04/27/see-it-contraband-video-gives-rare-look-at-disgusting-conditions-inside-manhattan-federal-jail/ ....7

## PRELIMINARY STATEMENT

We respectfully submit this brief on behalf of Mr. Evans to help the Court to determine a sentence that is sufficient but not greater than necessary to achieve the goals set out in 18 U.S.C. § 3553(a). For the reasons set out below, a sentence substantially below the stipulated Guidelines range would serve the interests of justice in this case. Among the considerations that support such a result are (1) Mr. Evans' acceptance of responsibility for his actions and his remorse for the harm he committed; (2) the length of the sentences handed down to the other defendants in similar cases, and to the other defendants in this case, particularly those who held leadership roles in the gang and who personally committed the acts of violence—none of which exceeded 20 years' imprisonment; (3) Mr. Evans' criminal history—this is his first offense; and (4) the challenging circumstances of Mr. Evans' youth and his willingness to learn from his mistakes.

In further support of Mr. Evans' sentencing submission, attached as Exhibit B are letters from Mr. Evans' family and friends which demonstrate some of Mr. Evans' positive qualities and paint a fuller picture of Mr. Evans.

## I. A SENTENCE BELOW THE STIPULATED GUIDELINES SENTENCE IS APPROPRIATE CONSIDERING THE § 3553(A) FACTORS

When determining the appropriate sentence, district courts must consult and consider the Federal Sentencing Guidelines but are not bound by them. *See United States v. Booker*, 543 U.S. 220, 264 (2005). Instead, the sentencing judge must "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" and impose a personal sentence accordingly. *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). To that end, the 18 § USC 3553(a) factors help the court consider the individual circumstances of each defendant and his conduct to "impose a sentence sufficient, but

not greater than necessary, to comply with the purposes" of the statute. 18 USC § 3553(a). Among the factors to be considered are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to, among other considerations, (a) reflect the seriousness of the offense, (b) afford adequate deterrence, and (c) protect the public from further crimes of the defendant; and finally (4) the need to avoid unwarranted sentencing disparities. *Id.* In light of these factors, Mr. Evans respectfully requests the Court to consider (i) his acceptance of responsibility for his actions, (ii) his difficult life experiences, including exposure to gangs from a young age, (iii) his lack of any previous criminal history, and (iv) the range of sentences given to similarly situated defendants, including those given to his co-defendants (from 27 months to 20 years, all substantially below the Guidelines range for Mr. Evans), a number of whom also held leadership roles within the gang, and impose a sentence significantly below the stipulated Guidelines range.

### A. A Sentence Substantially Below the Stipulated Guidelines Range is Sufficient to Reflect the Seriousness of the Offense and to Deter Future Criminal Conduct

On July 14, 2023, Mr. Evans accepted responsibility for his actions and pled guilty to two counts: (1) participating in a racketeering conspiracy in violation of Title 18, United States Code, Section 1962(d); and (2) conspiring to commit an attempted murder in aid of racketeering on or about August 24, 2019 and aiding and abetting the same in violation of Title 18 United States Code, Sections 1959(a)(5) and 2. Mr. Evans has expressed remorse for his crimes and has taken responsibility for the harm his past actions have caused.

Since his arrest in 2020, Mr. Evans has been incarcerated. That time was spent at the Metropolitan Correctional Center (the "MCC") (before it was closed) and at the Metropolitan Detention Center (the "MDC"), including during the height of the COVID-19 pandemic. Having no criminal history before this incarceration, his time in prison has served as a wake-up call: Mr.

Evans does not want to do anything that would force him to return to prison once his sentence is complete.

Mr. Evans is aware that the offense he committed is very serious, and the time he serves in connection with this case, even one substantially below the stipulated Guidelines sentence, will constitute a substantial term of imprisonment. Mr. Evans is currently 32 years old, and even a below-Guidelines sentence would mean that he is released at a mature age at which his recidivism risk will be low.

**B. The Court Should Consider Under § 3553(A), Mr. Evans' Personal History and Characteristics**

Mr. Evans respectfully asks the Court to consider his personal history and characteristics when imposing his sentence. 18 U.S.C. § 3553(a)(1). Mr. Evans has lived a difficult and, at times, unstable life; one marred by financial hardship, homelessness, and exposure to gangs. We share Mr. Evans' personal background with the Court, not as an excuse for his behavior, but because it is relevant to the Court's consideration of the history and characteristics of the defendant, and because it provides context to some of the choices that led Mr. Evans to this point.

a. Mr. Evans' Upbringing

Mr. Evans, now 32 years old, was born in Bushwick, Brooklyn in 1992. Pre-sentence Investigation Report of Willie Evans ("PSR") ¶ 142. He grew up with his now deceased mother, Tesa Houston-Evans, a homemaker, and his father, Willie Evans, Sr., a chef. *Id.*

Despite his parents' best efforts, the Evans family struggled financially; Mr. Evans grew up under poor socioeconomic conditions, and his family relied on public assistance for even the most basic of necessities. PSR ¶ 145. He spent periods of his childhood in homeless shelters and moved between different apartments frequently. PSR ¶ 145. Mr. Evans grew up in unstable neighborhoods that were not "the best[,]" surrounded by gangs and violence, and unfortunately, as

a young man, he felt he had "to figure out how to be safe." *Id.* Mr. Evans also has struggled with substance abuse issues: he began smoking marijuana at age fourteen and readily admits that he "has a problem with alcohol." PSR ¶ 153-157. Mr. Evans is looking to leave his substance abuse behind him and is amenable to counseling to do the same. PSR ¶ 153.

b. Mr. Evans' Friends and Family

Despite Mr. Evans' troubled childhood, Mr. Evans is dedicated to "maintaining strong family ties,"[1] and several family members have written to the Court on his behalf. As the letters of support demonstrate, Mr. Evans "is family oriented,"[2] and Mr. Evans has a history of stepping up for his family.

Mr. Evans' family and friends recall his dedication to his family. David Williams, Mr. Evans' godfather, recalls that Mr. Evans was "always respectful to adults and very helpful to the elderly."[3] For example, he helped his grandparents, including his legally blind grandfather, run their candy store in Manhattan.[4]

Mr. Evans' sister, Wilaysha Evans, highlights Mr. Evans' sense of responsibility, conviction, and focus on doing what is right in her letter.[5] Wilaysha recalls an instance when Mr. Evans rescued her when she was drowning in the Atlantic Ocean during a family trip to the beach when she was just nine years old.[6] But Mr. Evans' protection of his little sister extended beyond that one occasion—he gave her "advice on navigating the social landscapes of high school,"

---

[1] *See* Ex. B-1, Letter of Support from Ray Tebout ("Tebout Letter").
[2] *See* Ex. B-2, Letter of Support from Erica Negron ("Negron Letter").
[3] *See* Ex. B-3, Letter of Support from David Williams ("Williams Letter").
[4] *Id.*
[5] *See* Ex. B-4, Letter of Support from Wilaysha Evans ("Wilaysha Evans Letter").
[6] *Id.*

walked her from the apartment to the train station, and has left Wilaysha "in awe" of her older brother's courage and "his broader commitment to caring for others."[7]

Geraldine-Alexis Beltran, Mr. Evans' other sister, recalls that when she started her own clothing business, Mr. Evans helped with her operations.[8] Erica Negron, Mr. Evans' girlfriend of six years, describes Mr. Evans as her "best friend" and "#1 supporter."[9] And Jennifer Washington, Mr. Evans' cousin, notes that Mr. Evans makes sure that his family is "comfortable, warm if [they] were cold and fed if [they] were hungry."[10] She writes that Mr. Evans "was always there for us."[11]

His father, Willie Evans Sr., observes that Mr. Evans has "always tried to set a good example for his brothers and sisters." [12] When his father was working long hours, Mr. Evans "stepped up more times than [his father] can count. He helped get his siblings from school, with their homework, and anything else that needed doing."[13] And, when his mother became ill, Mr. Evans "was a rock. He made sure to look after his little brother and was there for" the entire family.[14] Mr. Evans is "emotionally devastated" that he was not able to help his mother, who passed away after contracting COVID-19 in 2020, while Mr. Evans was incarcerated. PSR ¶ 142.

The letters submitted on Mr. Evans' behalf show that his commitment to caring for others extended beyond his friends and family. Mr. Evans is "always willing to lend a helping hand to those in need[.]"[15] For example, Wilaysha recounts an incident where Mr. Evans stood up for a defenseless woman at a party, protecting her from being attacked by a group of young men.[16] Mr.

---

[7] *Id.*
[8] *See* Ex. B-5, Letter of Support from Gerladine-Alexis Beltran ("Beltran Letter").
[9] *See* Negron Letter.
[10] *See* Ex. B-7, Letter of Support from Jennifer Washington ("Washington Letter").
[11] *See id.*
[12] *See* Ex. B-6, Letter of Support from Willie Evans Sr. ("Willie Evans Sr. Letter").
[13] *Id.*
[14] *Id.*
[15] *See* Ex. B-8, Letter of Support from Norma Lopez ("Lopez Letter").
[16] *See* Wilaysha letter.

Evans "discouraged the upset man from proceeding [with the attack]" and could "have been greatly harmed himself in opposing this young man and the group that accompanied the man."[17] Mr. Evans did this, even though he "was not especially familiar with this woman and did not have any reason to defend her other than out of moral obligation."[18] And Unique Frazier recalls that Mr. Evans would help with her "car fare to commute to work" and lent her money "with no questions asked."[19] Mr. Evans also took care of Ms. Frazier's mother when she was sick and when Ms. Frazier was out-of-state.[20] Put simply, Mr. Evans "is the person you count on to help[.]"[21]

Deyrod Blake, an ex-boyfriend of Mr. Evans' sister, fought a five-year illness, throughout which Mr. Evans offered "moral support and encouragement to keep fighting and not give up."[22] Mr. Blake remarks that even after he and Mr. Evans' sister broke up, "he still treated me the same way[,] never changed."[23] Mr. Blake notes that Mr. Evans has lent "people money to get food," and that even if Mr. Evans only "had a dollar left to his name," he would give fifty cents to whoever needed it.[24] Mr. Blake said, "Willie is someone you could come [to] talk about anything and he wouldn't judge you."[25] Mr. Blake "would trust [Mr. Evans] with his life."[26]

c. Mr. Evans' Growth while Incarcerated

Mr. Evans has had time to reflect on and reevaluate his life during the 4 years he has been imprisoned in connection with this case. Mr. Evans is motivated to redeem himself both while incarcerated and after he has completed his sentence. He also is looking forward to his future and

[17] *Id.*
[18] *Id.*
[19] *See* Ex. B-9, Letter of Support from Unique Frazier ("Frazier Letter").
[20] *Id.*
[21] *Id.*
[22] *See* Ex. B-10, Letter of Support from Deyrod Blake ("Blake Letter").
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*

living a productive life after serving his sentence. Mr. Evans has expressed a desire to his godfather, David Williams, to move to Maryland, and get out of New York City, to rebuild his life the way his godfather did.[27] In relation to this move, Mr. Williams stated in his letter, "I absolutely said yes because his desire to change is greater than his desire to stay the same . . . Losing his mother and uncle while incarcerated has really made him want[] a better life if given the chance."[28]

d. Mr. Evans' Conditions of Incarceration

Mr. Evans has been incarcerated since February 2020, first at the MCC[29] until March 2021, and since then at the MDC. He has been in federal prison throughout the entire COVID-19 pandemic and contracted COVID-19 himself during that time.

Mr. Evans' time at the MCC was very challenging. While Mr. Evans was incarcerated at the MCC, BOP personnel found a firearm at the jail,[30] MCC staff failed to control a COVID outbreak, *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 328 (S.D.N.Y. 2020), mold grew in the walls of the MCC,[31] the MCC was plagued with rodent infestations,[32] and incarcerated persons were routinely denied hot meals.[33]

Mr. Evans' time at the MDC has been even more challenging as he has been forced to live with deplorable conditions. For example, those incarcerated at the MDC have been housed in jail cells with overflowing toilets, and their requests for decent toilet facilities have not been

---

[27] *See* Williams Letter.
[28] *Id.*
[29] Mr. Evans was transferred from the MCC to the MDC due to the deleterious conditions at the former facility, including the presence of toxic mold. The MCC has since closed down.
[30] Lauren del Valle, *Loaded Firearm Found in New York Federal Prison*, CNN (March 6, 2020, 6:31PM), https://www.cnn.com/2020/03/06/us/new-york-mcc-loaded-firearm-found/index.html.
[31] Stephen Rex Brown, *Contraband Video Gives Rare Look at 'Disgusting' Conditions Inside Manhattan Federal Jail*, NY DAILY NEWS (April 27, 2020, 4:00AM), https://www.nydailynews.com/2020/04/27/see-it-contraband-video-gives-rare-look-at-disgusting-conditions-inside-manhattan-federal-jail/.
[32] *Id.*
[33] Lauren del Valle, *Loaded Firearm Found in New York Federal Prison*, CNN (March 6, 2020, 6:31PM), https://www.cnn.com/2020/03/06/us/new-york-mcc-loaded-firearm-found/index.html.

meaningfully addressed. *United States v. Rivers*, 18-CR-00192 (WFK), ECF No. 134 (E.D.N.Y. July 29, 2021). And incarcerated persons at the MDC have found maggots, cockroaches, and "bug parts" in their food.[34] The United States Attorney's Office for the Eastern District ultimately acknowledged there were insects in the food served at the MDC. *See United States v. Elias*, 22-cr-317 (LDH) (E.D.N.Y. Apr. 4, 2024), ECF No. 66 (in which the United States Attorney's Office for the Eastern District of New York noted that the MDC "identified one bag from a particular manufacturer that showed the presence of weevils, an insect associated with grain food products.").

Mr. Evans respectfully requests this Court to consider the circumstances of his incarceration at the MCC and MDC in fashioning a just sentence. In recent years, sentencing courts in this district have acknowledged and taken into account, the more severe conditions of confinement at the MDC and MCC, especially during the pandemic. *See*, *e.g. United States v. Days*, 19-cr-619 (CM) (S.D.N.Y. Apr. 29, 2021), ECF No. 35, at Tr. 19:18 (Judge McMahon has described conditions at the MDC as "disgusting" and "inhumane."). For example, Judge Oetken observed that "because it's been harsher than a usual period[,] that it's more punitive, that it's essentially the equivalent of either time and a half or two times what would ordinarily be served" by a defendant serving pre-trial detention. *United States v. Gonzales*, No. 18-CR.-669-13 (JPO), (S.D.N.Y. Apr. 22, 2021), ECF No. 250, at Tr. 17:22-23. Judge Ramos noted that MCC staff's "response to the pandemic was ad-hoc and overlooked many gaps in its scheme to identify and isolate infected inmates – creating conditions that posed a substantial risk to the health of all inmates." *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 328 (S.D.N.Y. 2020). Recently, Judge Englemayer noted his district colleagues' repeated recognition that "the harsh

[34] John Annese, *Maggot-infested Meals Being Served to Inmates at Brooklyn Federal Jail, Lawyers Say*, NY DAILY NEWS (March 30, 2024, 1:38 P.M.), https://www.nydailynews.com/2024/03/30/maggot-infested-meals-being-served-inmates-at-brooklyn-federal-jail-lawyers-say/.

prison conditions at the municipal prisons at which defendants were held prior to sentencing during the first year of the pandemic, specifically the MDC and the Metropolitan Correctional Center" can serve as the basis for a reduced sentence. *United States v. Lopez*, 16-cr-317-22 (PAE), 2024 WL 964593, at *5 (S.D.N.Y. Mar. 5, 2024) (collecting cases).

Judge Furman's recent order in *United States v. Chavez* sets out the harrowing conditions—both caused by the COVID-19 pandemic and other reasons—that those incarcerated at the MDC have had to endure. No. 22-cr-303 (JMF), 2024 WL 50233 (S.D.N.Y. Jan. 4, 2024). Numerous incarcerated persons have complained about "near-perpetual lockdowns (no longer explained by COVID-19), dreadful conditions, and lengthy delays in getting medical care." *Id.* at *1. Indeed, "[i]t has gotten to the point that it is routine for judges in both this District and the Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC." *Id.* Judge Furman describes the MDC's rebranding of lockdowns (which the warden refers to as "modified operations") as "Orwellian[.]" *Id.* at *5. "In 2021, the MDC carried out 'planned maintenance' on the electrical system by enforcing a lockdown 'over the course of four nights' with no power and no water." *Id.* at *7. The lack of plumbing led to incarcerated persons' toilets overflowing "with water on the cell of their floor in the dark with feces on it." *Id.* In the last three years alone, at least four incarcerated persons have died by suicide at the MDC. *Id.* at *1. Judge Furman's order in *Chavez* is far from the first to observe the disturbing conditions at the MDC—in fact, Judge Furman notes that "[t]here are far too many cases to cite." *Id.* at *1 n.3.

Mr. Evans has served nearly four years at the MCC and MDC. The Court has the discretion to consider these deplorable conditions in imposing a sentence for Mr. Evans in this matter, and the "hard time" he has served at the MCC and MDC during this challenging period make a full Guidelines sentence greater than necessary to affect the goals of sentencing and by themselves

support the imposition of a sentence lower than what the Court may otherwise have concluded is appropriate. *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (holding that pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures).

### C. A Sentence Substantially Below the Stipulated Guidelines Sentence is Necessary to Avoid Unwarranted Sentence Disparities

In addition, a sentence substantially below the stipulated Guidelines Range is necessary to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a)(6) suggests courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Here, given Mr. Evans' lack of criminal history, and the sentences imposed on his co-defendants, a sentence significantly below the stipulated Guidelines range is appropriate.

Mr. Evans is not a defendant who requires a harsher sentence than that of his co-defendants to realize the consequences of his misconduct. Mr. Evans does not deny his role in the criminal enterprise. However, the Court should consider the sentences imposed on other co-defendants, including defendants with equivalent senior leadership positions in the gang, and those who personally committed violent acts, to avoid unwarranted sentencing disparities and impose a sentence that is sufficient, but not greater than necessary for Mr. Evans.

a. <u>Sentences Received by Co-Defendants</u>

Each of his co-defendants was sentenced to a term of incarceration that was well below the recommendations put forward by the Probation Office or requested by the government. While Mr. Evans acknowledges that each co-defendant's sentencing circumstances were unique, Mr. Evans respectfully requests that he similarly should receive a below Guidelines sentence.

First, most of Mr. Evans' co-defendants have received sentences substantially below the applicable Guidelines range. *See* Ex. A (Chart of Defendant Sentences). For example, Mr. Tyrique Snowden was charged with distributing narcotics on behalf of the enterprise and participating in an armed robbery during which he discharged a firearm. Government's Sentencing Submission of Snowden, ECF 437, at 1–3. He pleaded guilty to participating in the 59 Brims racketeering conspiracy, committing an attempted Hobbs Act robbery, and possessing a firearm in furtherance thereof, which resulted in a Stipulated Sentencing Guidelines range of a term of 147 to 168 months' imprisonment, with a mandatory minimum term of 60 months' imprisonment. *Id*. at 2–3. Mr. Snowden was sentenced to a term of imprisonment of 75 months. Snowden Final Judgment, ECF No. 484, at 3.

And numerous of Mr. Evans' other co-defendants—most of whom admitted to personally committing violent assaults in furtherance of the enterprise—pled to lesser offenses, and in some cases, no more than the mandatory minimum sentence was imposed. For example, Mr. Sylvester Wint was charged with a RICO conspiracy count, attempted murder and assault with a dangerous weapon in furtherance of the enterprise, and gun and drug crimes as a result of his involvement in the shooting of two rival gang members. Government's Sentencing Submission of Wint ("Gov. Wint Submission"), ECF No. 665, at 1–3. Mr. Wint faced a 7-year mandatory minimum term of imprisonment on the drug count and up to life in prison on multiple counts. Wint Plea Transcript, ECF No. 629, at 8:12–20. Mr. Wint pleaded guilty to brandishing a firearm during a crime of violence in connection with the shooting, which carried a mandatory minimum sentence of a term of 84 months' imprisonment under the Stipulated Sentencing Guidelines. Gov. Wint Submission at 3. Ultimately, he was sentenced to a term of 84 months' imprisonment. Wint Final Judgment, ECF No. 669, at 2.

b. Mr. Evans' Co-Defendants with Leadership Roles

Second, Mr. Evans should receive a sentence well below the stipulated Guidelines Range in light of the sentences imposed on other co-defendants with leadership roles. While Mr. Evans served for a period of time in the role of "Godfather" of the 59 Brims, he was not the only high-ranking member of the 59 Brims to have been sentenced in this case. In fact, he is not even the only sentenced defendant with the title of "Godfather." Both co-defendant Baley and co-defendant Simmons each held that title and already have been sentenced by this Court. Other leaders in the 59 Brims also have been sentenced.

***Robert Baley***. By the government's own acknowledgement, co-defendant Robert Baley—who was sentenced to 51 months imprisonment—outranked Mr. Evans as the "*highest* ranking member of the 59 Brims charged in this case." Government Opposition to Motion for Baley's Pretrial Release, ECF No. 255, at 1 (emphasis in original). The Government stated, "[a]lthough Willie Evans is the Godfather of the 59 Brims, Evans ultimately reports to Baley." *Id.* at 2. According to the government, "Baley has more authority than Evans in the gang, has been a member of the 59 Brims since around the time the set was founded, and ultimately controls all illegal activities for the gang." *Id*.

Baley, whom the government described as sitting on the "'Council,' which is a small group of individuals who wield enormous power within the United Bloods Nation," *id*, was sentenced to a term of 51 months' imprisonment, Baley Final Judgment, ECF No. 543, at 2. Mr. Baley's sentence was less than the Probation Office's recommendation of 63 to 78 months and was at the lowest end of his stipulated Guidelines range of 51 to 63 months. Government's Sentencing Submission of Baley, ECF 539, at 1. Mr. Baley received this sentence despite his participation in violent acts. Moreover, the government emphasized Baley's involvement with the 59 Brims' drug

dealing, including that "when Baley was arrested on these charges, law enforcement officers recovered garbage bags full of marijuana from Baley's vehicle." *Id.* at 3.

***Jamarr Simmons***. Co-defendant Jamarr Simmons—who was sentenced to a term of 20 years' imprisonment after admitting to personally stabbing a gang rival, arranging a violent robbery, and being present for two gang murders—also held the title of "Godfather." PSR ¶ 63. Unlike Mr. Evans, who has no prior convictions, Mr. Simmons had a long and violent criminal history. The Probation Office recommended Mr. Simmons be sentenced to a term of 360 months' imprisonment. Government's Sentencing Submission of J. Simmons, ECF No. 681, at 5. Citing to the criminal convictions listed in the J. Simmons PSR, the government stated that Simmons has "an extensive and violent criminal history." *Id.* at 4. The government described Mr. Simmons as holding "incredible rank" and occupying a role in the gang which was "very senior and very active. It was, in short, prolific." J. Simmons Sentencing Transcript, ECF No. 743, at 5:23-25; 6:17. To the extent Your Honor concluded that there was a need for specific deterrence of Mr. Simmons in light of his return to criminality after multiple criminal convictions and periods of imprisonment, that rationale applies with much less importance to Mr. Evans who is currently in prison with his first criminal conviction.

Mr. Simmons' violent conduct was notable. Mr. Simmons personally committed the stabbing of a rival gang member, whom he later bragged about doing "'filthy' by stabbing him 'ten times.'" Gov. J. Simmons Submission at 3. Simmons also conspired with other gang members—while already incarcerated—to coordinate the slashing of a former gang member on both sides of her face and told co-defendant Wint that he would slash the former gang member himself if he got out of prison in time to collect the $1,000 bounty. *Id.*; J. Simmons Sentencing Transcript at 6:8-10. Simmons also communicated with Bradford Mensah and lured him to the

park to receive gang discipline. Gov. J. Simmons Submission at 3. Simmons was then promoted to "Godfather." *Id*. Months after being promoted to "Godfather," Simmons was present at and involved in a fight in the Bronx during which another member of the 59 Brims, Jason Parris, was murdered. *Id*. A few months after that, Simmons organized the robbery of several individuals at gunpoint at a busy intersection where more than 20 bystanders, including children, had to flee to avoid the crossfire. *Id*. Since being arrested, Simmons also has participated in a violent stabbing of another inmate while in jail. Gov. J. Simmons Submission at 1, 8.

***Other Leaders.*** Many other high-ranking defendants also have been sentenced, including Augustus Ingram, Marcus Ayala, and Timothy Coleman. All three held high-ranking leadership positions within the gang. PSR ¶¶ 45, 46, 58. Of these men, Timothy Coleman, who was sentenced to a total term of 8 years' imprisonment, received the longest sentence. T. Coleman Final Judgment, ECF No. 295, at 2.

Augustus Ingram served as the "High 020" for the 59 Brims, which according to the government, ranks directly beneath that of "Godfather." PSR ¶¶ 58, 34. According to WhatsApp messages found on the cell phone of fellow gang-member Quaveon Ross, Ingram "gives orders to the other 59 Brims members and they regularly checked in with Ingram once a day." Government's Sentencing Submission of Ingram, ECF 758, at 2. The government further noted that "a substantial sentence [was] necessary to reflect the defendant's significant criminal history, which spans multiple decades and spans over five convictions." *Id*. at 4. Ingram was sentenced to a term of imprisonment of 50 months. A. Ingram Final Judgment, ECF No. 760, at 2.

Furthermore, co-defendant Markquel Simmons, whom the Government described as "a high ranking member of the 59 Brims Bronx lineup," received a below Guidelines term of 75-months' imprisonment. Government's Sentencing Submission of M. Simmons ("Gov. M.

Simmons Submission"), ECF 478, at 2; M. Simmons Final Judgment, ECF No. 483, at 2. The government had asserted that Simmons "criticized another 59 Brims member for not committing a robbery fast enough," "participated in the gang's robbery business" through which gang members "committed several dozen gunpoint robberies" in roughly a two-month period, and dealt and possessed firearms and drugs. Gov. M. Simmons Submission at 2–4, 8.

c. Mr. Evans' Co-Defendants who Engaged in Violent Crimes

Third, Mr. Evans should receive a sentence well below the stipulated Guidelines Range in light of the sentences (all below the Guidelines) imposed on his co-defendants who personally committed (and in many cases have a history of engaging in) violent crimes. For example, Mr. Daron Goodman—who is "unique" "from the perspective of other defendants" because he is the only co-defendant who pled guilty to first-degree murder—was recently sentenced to 144 months' imprisonment. D. Goodman Sentencing Transcript, ECF No. 763, at Tr. 4:10-12, 26:9. By the government's own admission, the killing was an "incredibly serious crime [] deserving of an equally-serious punishment and that punishment must reflect the seriousness of his crime . . .," *id*. Tr. 4:13-15, and "it also goes without saying that the law makes a distinction between crimes such as that, and accordingly, the sentences must make a distinction, because this defendant's conduct resulted in the death of another human being[,]" *id*. at Tr. 4:25–5:3.

Similarly, Mr. Sean Gambrell participated in a robbery at gunpoint with co-defendant Tyrone Ervin. Government's Sentencing Submission of Gambrell, ECF No. 616, at 1–3. He also participated in a 2019 robbery, in which the victim was lured to Jerlaine Little's apartment for sex but was instead assaulted and robbed at gunpoint. *Id.* at 2. Mr. Gambrell pled guilty to assault with a dangerous weapon in aid of racketeering. *Id.* at 2–3. The Probation Office recommended

he receive a sentence of 70-87 months' imprisonment. *Id.* at 2. Ultimately, he was sentenced to a term of imprisonment of 60 months. S. Gambrell Final Judgment, ECF No. 619, at 2.

In light of U.S.C. § 3553(a)(6), we request that the Court consider the sentences imposed on the co-defendants in this case, as it weighs the complex question of the relative culpability of these defendants, and the appropriate sentence for Mr. Evans. To aid in the Court's consideration of Mr. Evans' co-defendants' sentences, Mr. Evans provides the Court with Exhibit A, a chart summarizing each co-defendant's stipulated Guidelines Range and sentence that he received. The below excerpt from Exhibit A, evidences the sentences imposed on Mr. Evans' co-defendants who held high ranking positions in the 59 Brims.

| Chart of Defendant Sentences | | | |
|---|---|---|---|
| **Defendant (Position)** | **Govt. Recommendation** | **Stipulated Guidelines Range** | **Sentence** |
| **Robert Baley (highest ranking member of 59 Brims; council member of the NYBBA)** | 51-63 months | 63-78 months | 51 months imprisonment and 3 years supervised release. |
| **Jamarr Simmons (“Godfather”)** | 300 months | 360 months | 20 years (240 months) for Count 1 (racketeering conspiracy) and 10 years (120 months) for Count 13 (attempted murder in aid of racketeering), to be served concurrently. |
| **Augustus Ingram (High 020)** | 77 to 96 months | 135 to 168 months | 50 months |
| **Daron Goodman (Lieutenant)** | 240 months | 240 months | 144 months |
| **Markquel Simmons (Lieutenant)** | Guidelines of 117-131 (57-71 months from Count 1 and 60 months from the 5-year mandatory min from Count 19) | 84 months total (60 months from the 5-year mandatory min on Count 19, and an additional 24) | 75 months total (15 months on Count 1 to be followed by a mandatory consecutive 60 months imprisonment on Count 19) and 5 years supervised release. |

d. Mr. Evans’ Co-Defendants who Pled to Lesser Offenses

Fourth, some co-defendants, all members of the 59-Brims, pleaded to lesser offenses, after being charged with RICO, including some who committed violent crimes in furtherance of the 59-Brims. For example, co-defendants Sylvester Wint, Tyrone Ervin, Javaris Jenkins, and Shamare Reid each pled guilty to 18 U.S.C. § 924(c) charges for possession of firearms furthering crimes of violence. All four of these defendants were clearly identified as, and admitted to being

responsible for shootings, slashings, and other violent crimes. Gov. Wint Submission, ECF No. 665, at 2 (observing that Wint engaged in a shooting at a bodega on August 24, 2019); Government's Sentencing Submission of Ervin, ECF No. 599, at 2 (Ervin brandished and discharge multiple rounds of a firearm while fleeing a robbery); Government's Sentencing Submission of Jenkins ("Gov. Jenkins Submission"), ECF No. 658, at 2 (Jenkins participated in two shootings of rival gang members); Government's Sentencing Submission of Reid ("Gov. Reid Submission"), ECF No. 514, at 4 (defendant Reid "participated in a violent gang shooting and a violent gang slashing.").

Ervin, Jenkins, and Reid each were charged with crimes that were punishable by 10-year mandatory minimums. Ervin Plea Transcript, ECF No. 576, at 8:12–15; Jenkins Plea Transcript, ECF No. 621, at 8:7–15; Reid Plea Transcript, ECF No. 465, at 8:21–9:3. However, each of these Defendants ultimately pled to lesser offenses, receiving a mandatory minimum of 84 months' imprisonment (or roughly 7 years) instead of a 10-year mandatory minimum. T. Ervin Final Judgment, ECF No. 601, at 2; J. Jenkins Final Judgment, ECF No. 662, at 2; S. Reid Final Judgment, ECF No. 519, at 2.

To date, except for Mr. Simmons, all of Mr. Evans' co-defendants were sentenced to terms of imprisonment of between 27 months and 144 months. Given the relative culpability of Mr. Evans, an appropriate sentence for him is well below that recommended by the Probation Department and substantially below the stipulated Guidelines sentence.

## II. THE COURT SHOULD DISREGARD THE JUDICIARY SENTENCING INFORMATION (JSIN) IN DETERMINING THE APPROPRIATE SENTENCE FOR MR. EVANS

The U.S. Sentencing Commission's Judiciary Sentencing Information (JSIN) database is an online resource intended to provide sentencing data for similarly situated defendants. The Court

is not required to consider that data in determining an appropriate sentence, and given its limitations, should not do so here.

At the outset, JSIN tends to improperly skew results towards higher sentences. For instance, JSIN (i) does not provide information on where within the guideline range sentences fall—i.e., the proportion of cases at the bottom, middle, or top of the guideline range; (ii) does not provide the distribution of sentences imposed; (iii) provides only national results and does not filter by district or circuit; and (iv) relies on dynamic data that is not publicly available.

According to figures included in the PSR, the JSIN indicates that from fiscal years 2018 through 2022, there were 67 defendants whose primary guideline was § 2A1.1, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding those with a § 5K1.1 substantial assistance departure; and for those, provides an average length and median length of imprisonment imposed.[35] However, Mr. Evans (and the Court) is (i) prevented from understanding the methodology and criteria used for determining which 67 defendants were included (and which were excluded) in JSIN's statistical analysis; (ii) prevented from knowing the identity of the 67 defendants within the JSIN's results; and (iii) prevented from reviewing and understanding the facts and circumstances at issue in each of the 67 criminal cases that led to the sentences ultimately imposed on those defendants, so that a comparison could be made of the facts of the offenses and the characteristics of the defendants to determine whether or not they provide a meaningfully useful comparison point for this case.

Moreover, the JSIN results reflect defendants whose primary guideline was § 2A1.1, namely murder. But importantly Mr. Evans did not plead guilty to murder. Accordingly, the circumstances of his case likely are distinguishable from those of the unidentified sixty-seven

[35] Sentences of 470 months or greater (including life) were included in the computations as 470 months.

defendants sentenced for murder. For instance, he is not alleged to have personally committed murder himself, whereas the typical murder sentences include those who did in fact commit the act that caused the death of another person. Moreover, from the data presented, one cannot tell whether there were aggravating circumstances driving the sentences behind the JSIN average. For all these reasons, the Court should disregard JSIN's data in determining the proper sentence for Mr. Evans.

## III. THE COURT SHOULD CONSIDER THE DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Evans respectfully objects to Paragraph 142 of the PSR. Paragraph 142 states Mr. Evans' mother "has a drinking problem." As Mr. Evans' mother passed away while he was incarcerated, we respectfully ask the Court to update this to "had a drinking problem."

## IV. CONCLUSION

For the reasons set forth above, we respectfully request that the Court impose a sentence substantially below the stipulated Guidelines range and less than that imposed on co-defendant Simmons. Mr. Evans has accepted responsibility for his actions and has recognized the harm his past actions have caused. He is aware that the time he serves in connection with this case will constitute a substantial term of imprisonment. A sentence substantially below the stipulated Guidelines sentence is sufficient but no greater than necessary to comply with the aims of sentencing and meets all the statutory sentencing goals.

KOFFSKY & FELSEN LLC

Dated: April 22, 2024
New York, New York

By: */s/ Bruce D. Koffsky*
Bruce D. Koffsky
KOFFSKY & FELSEN LLC
1261 Post Road, Ste. 202B
Fairfield, Connecticut 06824
Telephone: (203) 327-1500
bkoffsky@snet.net

ALLEN & OVERY LLP

By: */s/ Eugene Ingoglia*
ALLEN & OVERY LLP
Eugene Ingoglia
1221 Avenue of the Americas
New York, New York 10020
Telephone: 212-610-6326
eugene.ingoglia@allenovery.com

**DEFENSE EXHIBIT A**

| Defendant | Govt. Recommendation | Stipulated Guidelines Range | Sentence |
|---|---|---|---|
| **Marcus Ayala** | 87-108 months | 87-108 months | 94 months' imprisonment, 3 years supervised release |
| **Robert Baley** | 51-63 months | 51-63 months | 51 months' imprisonment, 3 years supervised release |
| **Markell Bobian** | 57-71 months | 57-71 months | 38 months' imprisonment, 3 years supervised release |
| **Timothy Coleman** | 151-188 months | 151-188 months | 8 years' imprisonment, 3 years supervised release |
| **Darnell Cooper** | 33-41 months | 33-41 months | 27 months' imprisonment, 2 years supervised release |
| **Tyrone Ervin** | 84 months | 84 months | 84 months' imprisonment, 5 years supervised release |
| **Sean Gambrell** | 70-87 months | 70-87 months | 60 months' imprisonment, 3 years supervised release |
| **Daron Goodman** | 240 months | 20 years | 144 months' imprisonment, 3 years supervised release |
| **Augustus Ingram** | A substantial sentence, as calculated in the plea agreement, bearing in mind that the guidelines would be 77-96 months if adjusted to the powder cocaine guidelines | 135-168 months; 77-96 months if adjusted to the powder cocaine guidelines. | 50 months' imprisonment, 3 years supervised release |
| **Javaris Jenkins** | 84 months | 84 months | 84 months' imprisonment, 3 years supervised release |
| **Jerlaine Little** | A substantial sentence, but one that is below the stipulated guidelines of 108-135 months | 108-135 months | 70 months' imprisonment, 4 years supervised release |
| **Shamare Reid** | 84 months | 84 months | 84 months' imprisonment, 2 years supervised release |
| **Jose Rodriguez** | 63-78 months | 63-78 months | 48 months' imprisonment, 3 years supervised release |
| **Quaveon Ross** | A significant sentence, but one that is below the Stipulated Guidelines range of 84-105 months | 84-105 months | 60 months' imprisonment, placed in the BOP Residential Drug Abuse Program (RDAP), 4 years supervised release |
| **Albert Shoulders** | 51-63 months | 51-63 months | 42 months' imprisonment, 3 years supervised release. |

| | | | |
|---|---|---|---|
| **Markquel Simmons** | Guidelines of 117-131 (57-71 months from Count 1 and 60 months from the 5-year mandatory min from Count 19) | 117-131 months | 75 months' imprisonment total (15 months on Count 1 to be followed by a mandatory consecutive 60 months' imprisonment on Count 19), 5 years supervised release |
| **Jamarr Simmons** | 300 months | 300 months | 20 years' imprisonment (240 months) for Count 1 (racketeering conspiracy) and 10 years' imprisonment (120 months) for Count 13 (attempted murder in aid of racketeering), to be served concurrently, 3 years supervised release |
| **Ranell Sloan** | 33-41 months | 33-41 months | 33 months' imprisonment, 3 years supervised release |
| **Tyrique Snowden** | 147-168 months | 147-168 months | 75 months' imprisonment, 5 years supervised release |
| **Sylvester Wint** | 84 months | 84 months | 84 months' imprisonment, 3 years supervised release |

# Exhibit B

# Exhibit B-1

Exodus
TRANSITIONAL COMMUNITY, INC.
CHANGING LIVES • RESTORING HOPE

Ray Tebout, SPHR, GPHR, CASAC
2271 3rd Avenue
New York, New York, 10035

November 24, 2023

Hon. George B. Daniels
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Subject:** Character and Support Letter for William Evans, Jr.

**Dear Honorable Judge George B. Daniels,**

I am Ray Tebout, and I write this letter in a dual capacity – as a longtime friend of the Evans family and as the the current Associate Vice President at Exodus Transitional Community. This letter is a character reference for William Evans, Jr. (Will), whom I have known for over a decade. I imagine most of the letters you will receive will focus on Will's character and fitness for release, and I certainly share and endorse those perspectives in this letter. My letter will also include mention of the resources, relationships, and experiences that I will personally commit to ensuring Will's success upon release. I know, from lived experience that people make poor choices, but with the appropriate levels of self-reflection, motivation, and adequate support, those same individuals can experience amazing transformations and become significant contributors to their communities.

I first met William Evans, Jr. (Will) through his father, Will Evans Sr., who was instrumental in my post-incarceration journey by offering me one of my first jobs after my release from prison. This connection not only introduced me to Will Jr. but also established a bond that has grown into mutual respect and admiration. Will's unwavering commitment to becoming a better person mirrors the essential elements I've identified as critical for successful societal reintegration. His dedication to securing stable employment, fostering positive



**Executive Staff:** Julio Medina, Founder & Executive Director | Kathleen Bernier, Vice President of Operations | Diana Ortiz, Vice President of Wellness and Genesis Centers | Nora Reissig, Vice President of Development & Programs | Kandra Clark, Vice President of Policy and Strategy

**Board of Directors:** Rev. Dr. Lonnie McLeod, *President Emeritus* | Robert Hall, *Chairman Emeritus* | Michael Luciano, *Chairman*
Wayne Atwell | Kayuri Bhimani | John Gilbert | David Hobert | Yumari Martinez | Ashley Morrissey | Shaivali Shah | Joe Turner

Exodus
TRANSITIONAL COMMUNITY, INC.
CHANGING LIVES • RESTORING HOPE

community relationships, pursuing education, and maintaining strong family ties are all hallmarks of his character. These attributes, which I have come to know well through our interactions over the years, reflect a deep-seated determination to improve himself and contribute meaningfully to his community. Will's consistent efforts in these areas resonate with my own experiences and understanding of what it takes to successfully return to society, reinforcing my belief in his potential and my support for his reintegration.

My personal journey through the criminal legal system, including serving 11 years in NYS prisons, was transformative. The two decades since my release have been dedicated to studying and applying what I learned to assist others in their reentry. This commitment has enabled me to help over 1000 individuals successfully reintegrate into society, a testament to the depth of my experience and understanding in this field.

As an expert in the field of reentry and reintegration, I bring a wealth of knowledge to my role at Exodus Transitional Community. My professional journey of 15 years has focused on developing innovative solutions to support those impacted by the criminal legal system. My background in human resources, counseling psychology, and substance abuse counseling, combined with my personal experiences, has uniquely equipped me to help others navigate the challenges of post-incarceration reintegration. .

In my various roles, including my consultancy with MindFrame Development Solutions and leadership positions at Rutgers University and The College Initiative, I have honed skills crucial for addressing post-incarceration challenges. My leadership in organizations like The Fortune Society further demonstrates my deep understanding of the systemic barriers and the necessary supports for successful reentry .

In supporting Will, I leverage my extensive personal and professional experience. My unique knowledge of Will, coupled with my understanding of successful reentry principles and the value of community support, will be instrumental in aiding his transformation into a productive, law-abiding citizen.



**Executive Staff:** Julio Medina, Founder & Executive Director | Kathleen Bernier, Vice President of Operations | Diana Ortiz, Vice President of Wellness and Genesis Centers | Nora Reissig, Vice President of Development & Programs | Kandra Clark, Vice President of Policy and Strategy

**Board of Directors:** Rev. Dr. Lonnie McLeod, *President Emeritus* | Robert Hall, *Chairman Emeritus* | Michael Luciano, *Chairman*
Wayne Atwell | Kayuri Bhimani | John Gilbert | David Hobert | Yumari Martinez | Ashley Morrissey | Shaivali Shah | Joe Turner

Exodus
TRANSITIONAL COMMUNITY, INC.
CHANGING LIVES • RESTORING HOPE

In conclusion, I firmly believe in Will's potential for positive change. My journey, deeply rooted in overcoming similar challenges, stands as a testament to what is possible with the right support. I am committed to leveraging my expertise and network to assist Will in his reintegration journey. Please contact me if you need further information.

**Sincerely,**

**Ray Tebout, SPHR, GPHR, CASAC-Advanced**
Associate Vice President of People and Practices
Exodus Transitional Community



**Executive Staff:** Julio Medina, Founder & Executive Director | Kathleen Bernier, Vice President of Operations | Diana Ortiz, Vice President of Wellness and Genesis Centers | Nora Reissig, Vice President of Development & Programs | Kandra Clark, Vice President of Policy and Strategy

**Board of Directors:** Rev. Dr. Lonnie McLeod, *President Emeritus* | Robert Hall, *Chairman Emeritus* | Michael Luciano, *Chairman*
Wayne Atwell | Kayuri Bhimani | John Gilbert | David Hobert | Yumari Martinez | Ashley Morrissey | Shaivali Shah | Joe Turner

# Exhibit B-2

Dear Honorable Judge Daniels,

Your honor I am writing to you today to provide my support for my boyfriend, Willie Evans.

My name is Erica Negron and a bit about me, I have worked with Advanced Dermatology, for the past 6 years as an office manager.

I have known Willie for 10.5 years. We have been together for the past 10 Years. He's my best friend and my #1 supporter. He is incredibly supportive and has helped me accomplish some of my goals. I have seen Willie grow into the man he has become, over the years he became well-educated, honest, generous, kind and hard working. He had a passion for many things and always willing to gain knowledge. He was passionate about learning carpentry. He is not only apart of his family; he is also apart of my family. He is family oriented. He has a great reputation and anyone that knows him will say he is kind hearted, always laughing and joking.

Willie has had some personal difficulties growing up. He has completed a few programs during the process of his case and has been working on self-improvment changes. During Willie's incarceration i will support him and encourage him to continue the programs, stay focus and keep encouraging him to do better. Reagrdless of the outcome i will always be their to provide support.

It is my sincere hope the court takes this letter into consideration during the time of sentencing. Despite the current case, i still belive Willie to be an honest human being.

# Exhibit B-3

**From:** DAVID WILLIAMS
**To:** Ingoglia, Eugene:LT (NY)
**Cc:** Cecchini, Rebecca:LT (NY)
**Subject:** Willie Evans character letter
**Date:** Thursday, November 16, 2023 1:50:53 AM

**Caution: non-A&O email**

To the Honorable George B. Daniel's

I hope all is well. My name is David Williams and I'm legally Willie Evans Godfather but called uncle D since he could talk. My wife of 30 years is called Aunt Kandii. I have known Willie since he was born and have been active in his life since then, because his father and I have been friends who call each other brothers since first grade. I have been working for BellI /Atlantic which is now Verizon for 27 years in Maryland. I've lived here since January 1990 and visit NYC 2 to 3 times a year since 2000 when my income became better. Every visit I see him since I'm always visiting his father. He is always respectful to adults and very helpful to the elderly. He has helped his grandparents working at their store which they have within the main post office in Manhattan for years while living with them after high school. It was closer to stay there rather than commute from Brooklyn. He has been present at every family event that my wife and I came to NYC to celebrate. For the last 4 years before he got arrested, he was always present for New Year celebration at his grandparent house. The last time we saw him was for New Year celebration 2019 turning to 2020 when he was a holiday worker for UPS. Although he is locked up with no idea of what time he is going to get, he asked if the state will allow it? Can he move to Maryland with his Aunt Kandii and I. I absolutely said yes because his desire to change is greater than his desire to stay the same. I hope and pray that it can come true because 33 years ago I was given a chance by my biological brother to leave NYC for a change and now I'm a married law abiding citizen living in a house which was the reason I decided to leave NYC. With this being said, I hope that you can show mercy, leniency and give Willie Evans another opportunity to show the world that he can change living in Maryland. Losing his mother and uncle while being incarcerated has really made him wanting a better life if given the chance. I included some pictures of me, his mom and father when he was born and one celebrating his grandmother birthday etc. My wife is the woman at the end on the left of one of the group pictures with her eyes close and a scarf on her head.
Have a good day your Honor.
Sent from my T-Mobile 5G Device
Get Outlook for Android

# Photographs Redacted

# Exhibit B-4

Wilaysha Evans
[redacted]
Brookline, MA [redacted]

November 13, 2023

Dear Honorable George B. Daniels,

I hope this letter finds you well and in good health. My name is Wilaysha Evans and I am currently a third-year PhD student in the chemical biology PhD program at Harvard Medical School. Willie Evans—also known in our family as "Will Jr.," "Will J," "Jay," "Bro," or what I jokingly started using when we were teenagers to pretentiously address him but now endearingly use, "William"—is my older brother. Four years younger than William, I have known him my entire life, lived with him the first eighteen years of my life, and maintained a friendship with him throughout the nearly ten years we have lived apart. I write this letter to provide a picture of William's character, one that I have admired and been inspired by for much of my life.

One of the first thoughts that comes to mind when I think about William is his sense of responsibility to me and others. From him rescuing a nine-years old me who almost drowned in the Atlantic Ocean during our family trip to the beach, to his advice on navigating the social landscapes of high school, to him walking me from his apartment to the train station the last morning I saw him before he got arrested for the charges he is now facing, William has always been a conventionally protective and caring older brother to me. In addition to experiences I have witnessed where William committed an act of kindness to a stranger or family member, there is one particularly striking experience that William told me when we were teenagers that made me realize his protective and caring ways extended beyond our siblinghood. While William was at a social gathering held in a friend's apartment, one young man at the gathering became upset with and attempted to coordinate a group attack of a young woman also present at the gathering. Knowing that the woman would likely be greatly harmed, William discouraged the upset man from proceeding and stood up for the woman, ultimately preventing the attack. As far as I am aware, William was not especially familiar with this woman and did not have any reason to defend her other than out of moral obligation. William could of course have been greatly harmed himself in opposing this young man and the group that accompanied the man. When I heard this story, I was in awe of William—of his courage and of his broader commitment to caring for others where possible.

William's unchallengeable sense of humor, his likeability, his interests, and his unwavering positive outlook are other thoughts that come to my mind when thinking about him. Of the countless family gatherings we have had, there is zero family gathering I or anyone else can name where William was present and he was not making people laugh with his stories and jokes. William had a wide range of friends that frequently visited him at our home for anything from dinners to video-gaming nights to simply chatting, that he talked to over animated but notoriously long phone calls, or that he joined in social outings. Before going to jail and after working a variety of gigs, William worked as a part-time UPS delivery driver helper and looked forward to soon enrolling in a carpentry apprenticeship to pursue carpentry as a career. Finally, over the past three years, he has not only been in jail but has also faced the sudden death of our mother due to COVID and the death of a close uncle due to heart failure—despite this, he has authored a story, read hundreds of books, expressed interest in participating in a work program while in jail, cracks a joke and says he is "staying positive" every time we talk, and is always eager to find out how others and I have been. All of this considered, William easily comes to my mind as a beacon of joy and of strength.

William's time in jail and subsequent time in prison may be described as his lost freedom. Also true, however, is that our family, the communities that William was and would been a part of, and I have lost the blessing of time with him. William is a dutiful, noble, caring, hilarious, and resilient brother, friend, and human—I thank you for your openness to this picture of him. I hope you agree and return him to us soon.

Sincerely,
Wilaysha Evans
Wilaysha Evans

# Exhibit B-5

10/01/2023

Hon. George B Daniels
C/O Rebecca Ann Cecchini, Allen and Overy LLP
1221 Avenue of Americas
New York, NY 10020

Dear Your Honor,

Hello my name is Geraldine-Alexis Beltran sister of Willie Evans. I am currently employed at Kings County Hospital Center as a client navigator lv 1 for the past 10 years. I am presently the CEO of the clothing brand Pink Pooch established in 2016. I am writing this letter hoping you are in great health. I am writing today to share some characteristics about my brother. I have had the pleasure of knowing Mr. Willie Evans for 34 years which is my entire life as, he is my biological brother.

In my opinion Mr. Evans is very empathetic to whomever he comes into contact with. He believes laughter and music cures the soul. My brother is sometimes too generous because he will give a stranger the coat off his back. He had this humbleness to him majority of our childhood, he never looked at the less fortunate as beneath him. A lot of his humbleness grasps from financial struggles witnessed during his upbringing. Two Parent home however 1 working parent vs 5 children ratio. During Willie's early twenties he struggled with securing a permanent residence while trying to maintain a startup boxing career, he worked for my grandparents in their store and off the book moving jobs with my cousin and/or maintenance jobs. Eventually he had to choose whether to pay for boxing training or somewhere to rest his head. It was at this point I invited my brother to live with me in Brooklyn.

Being that I was just beginning my brand it was reasonable to hire my brother as my security detail. His job duties included attendance to all my events, secured premises and or vehicles to and from locations for myself and my 20 models. At the time my brother organized a team of his friends that would work as my Pooch security detail. To this day my security still follows the protocol that my brother put in place. Willie Evans was a thorough employee detail oriented, paid close attention to details including but not limited to my models needs or wants. He is a people person, gets along well with majority of everyone. If you are in a room with him and you don't laugh we once considered you to be weird because no matter what's bothering you he will make you laugh. I tell him all the time he needs to do comedy.

One of the last conversations I had with my brother before any of this occurred we discussed his ambitions in life and what he wanted to do. His dreams included (at the time) to be a boxer and to pursue school to gain a trade. He was working as a seasonal worker with NYCHA prior to his arrest. Willie did enroll in an OSHA program; as his big sister I was very proud of this new beginning for him. As children I always believed my brother would be a movie director or screen writer because of the plays he would create daily. While he is incarcerated I hope to support him in making his dreams his reality as well as reforming him as an individual. I pray this letter helps you see Willie through my eyes.

Respectfully,

Geraldine-Alexis Beltran

Geraldine-Alexis Beltran

# Exhibit B-6

Willie Evans
[redacted]
Bronx, New York, [redacted]
Evans Catering and Consultant Inc.

Honorable Judge Daniels
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

February 2, 2024

Dear Judge Daniels,

I am Willie Evans, father to Willie Evans Jr. I'm reaching out to talk about my son in light of his upcoming sentencing. Understanding the seriousness of what's happened, I still hope you'll see the potential for change in him and consider a sentence that gives him a chance to turn things around.

Willie is the second of our five kids and has always been a solid part of our family. Even though he's stumbled a bit as a teenager, he's always tried to set a good example for his brothers and sisters. With my job as a chef keeping me away from home at odd hours, Willie stepped up more times than I can count. He helped get his siblings from school, with their homework, and anything else that needed doing.

Our family hit a rough patch when my wife got really sick in 2014. It was a tough time for all of us, but Willie was a rock. He made sure to look after his little brother and was there for all of us, showing strength that I was amazed to see. We've always been a team, me and my kids, leaning on each other when things get hard.

Since Willie got into trouble, we've had a lot of talks about his future. He's truly sorry for what happened and I believe he's learned a lot from this. We're thinking about moving for a fresh start once he's out, hoping that a new place might help him leave the past behind and do better.

I wanted to share this with you because I think it's important to see who Willie really is. He's a good kid who lost his way, but he's ready to make things right.

Thank you for reading my letter and for considering giving my son a chance to prove he can change.

Sincerely,

Willie Evans

# Exhibit B-7

10/02/23

Hon. George B. Daniels

C/O Rebecca Ann Cecchini, Allen and Overy LLP

1221 Avenue of Americas

New York, NY 10020

To whom it may concern,

My name Is Jennifer Washington cousin of Willie Evans. I currently work for Mount Sinai Hospital as a Scheduling Coordinator. I've known Willie Evans for over 20 years. His mother Teas Evans, which is my Maternal cousin, rented the apartment downstairs in the house my mother owned. During that time his siblings and I grew a close bond. Since our adolescent years Willie has always shown great character. He always made-up creative ways for us to have fun. From Putting on shows to entertain his sister and I or showing us how to fix our Nintendo game when things went wrong. He was always there for us. I distinctly remember one day I was having trouble with choosing if I wanted McDonalds or Pizza (which was a big deal back then) and to helped me solve my problem. He told me to imagine a McDonalds' Burger in one hand and a Pizza in the other and take a bite of each and that will help me determine my answer. The crazy thing is it did. He doesn't know but I still use that method to this day. Around the age of 11 or 12 his mother and father decided to move. We'd see each other seldom throughout the years, however when we did get together, he always showed me unconditional love.

During our adult years we both worked/assisted his sister Gerald Alexis Beltran with her brand Pink Pooch. He was a Security Guard, and I was a model. Willie always made sure Alexis and us models had what we needed and more. He made sure we were comfortable, warm if we were cold and fed if we were hungry. He showed great work ethics, care and concern. I thought that was honorable. Not all people take someone from their family business seriously and he did.

I believe that Willie deserves a chance to be free and home with his family. We miss and all the qualities I listed will shine when he's around us. We speak through his sister Alexis, and he has expressed him becoming an entrepreneur and writing a memoir. Willie has mentally grown and is ready to explore the world and his higher self. I believe with us by his side there is no room for error, and he will flourish. Thank you for your time. I hope you take this letter into consideration.

Sincerely,

Jennifer Washington

# Exhibit B-8

Norma Lopez
[redacted]
Brooklyn, NY [redacted]
Phone: [redacted]
Email:[redacted]

Hon. George B. Daniels
c/o Rebecca Ann Cecchinni
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
Rebecca.cecchinni@allenovery.com

November 3, 2023

**Re: Willie Evans**

Dear Judge Daniels,

My name is Norma Lopez, I am a paralegal for a large firm in Manhattan. I have known Willie for about ten (10) years. Willie, along with his family, has been dear friends to my family and I for quite some time and we have shared a lot of good memories together. Willie has always been a very ambitious young man as well as very charismatic and humorous. Willie was always very crafty and handy as he worked a lot in carpentry. I must say that his work in carpentry was quite skillful along with his attention to detail and precision to the craft. Willie was able to maintain and excel at his job in carpentry for quite some time. Aside from his skills in carpentry Willie was highly interested in real estate. In fact, real estate is a profession that Willie began going to school for. In my experience with Willie, he has always been an honest, hardworking, and responsible individual. Willie was always willing to lend a helping hand to those in need and he has always been very family oriented.

Your honor, I believe that Willie would be a valuable member of society if given a second chance to continue in his original path before his brush with the law. As we have all made mistakes at some point or another, we were given a second chance for redemption and people do change and learn from their

mistakes. I strongly recommend as a person of good character Willie deserves the court's leniency in his current legal situation.  Thank you for your attention to the foregoing.

Respectfully submitted,

Norma Lopez

# Exhibit B-9

To Whom It May Concern,

I am writing this letter on behalf of Willie Evans as a witness to his character and what kind of person he is. Mr. Evans has always been a loving and loyal person to his friends. I understand the severity of the accusations against Mr. Evans but have never seen anything but an incredible person. Mr. Evans has always been there whenever I needed it. My mother was sick for a while and I lived out of state. Mr. Evans was the person that would help her when it was needed.

Willie is the person you could count on to help with this. No matter if it was before I had to go to work or after. I never had to question if he would check up on her or make sure she had what she needed when my siblings couldn't. Whenever I needed car fare to commute to work, and money was low, he always lent me money for the week, with no questions asked. These were the things Mr. Evans would do for those he cared about. This is the version of Willie Evans that I have come to know.

I understand how serious the charges are, but I ask the judge and district attorney to consider these examples. He has helped more people in the community than you guys will know about. I believe he is innocent, `he helps a lot of people in their time of struggle with whatever resources he has available. Please provide him with a chance to prove what I and those who are closest to him already know, that he is an awesome person who is good to his community. I appreciate your time in reading this letter. Thank you.

Sincerely,

Unique Frazier

Unique Frazier

# Exhibit B-10

To : Hon. George Daniel's

My name is Deyrod Blake .Im 33years old and I'm a plumber and been doing this for the last 6-7 years . I would like to tell u I've know Willie since 2005 . I was turning 16 and he was turning 15 . We met through his sister who was my girlfriend at the time . Since that he has been a brother to me and always gave me great advice [redacted] . The moral support and encouragement to keep fighting and not give up. Him telling I have a lot of life left to him letting me know god has plans for me. He would check up on often to make sure I was good and not in a depression state of mind . Till this day I'm very thankful for him . Willie is a really great person . He very loyal and out going for people don't matter who you are .I've seen him lend people money to get food when we're in high school and that's a trait that never left him . I would trust him with my life and I know if he had a dollar left to his name he would give me or anybody 50 cent. Willie is someone you could come talk to about anything and he wouldn't judge you. Even when me and his sister broke up he still treated me the same way never changed . It's been times I didn't have any money and he would lend me money from the job when he was working in the store in the post office . I was inspiring him to get in the construction industry which is a trade and will be able to feed him and his family for as long as he is alive . He was in the process of getting all his licenses to work construction with me doing plumbing or if he wanted to be a carpenter. I would tell him and show him pictures of work which he was interested in . Hopefully when he is released . He can pick where he left from and start his construction journey ..He is very smart man and would be a great addition to the construction industry. With his strong mentality he would definitely succeed in the construction industry. Me knowing Willie as soon he is able to get to help out a person in need he would get them a job working with him doing construction. Willie is a person who is very missed and needed and we're hoping to hopefully have him back home . Hoping everything workouts and we can put this behind us and move forward and make up for lost time

Signed ..D.Blake

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 26, 2024

**BY ECF**

The Honorable George B. Daniels
United States District Judge
500 Pealr Street
Southern District of New York
New York, New York 10007

**Re: *United States v. Willie Evans*, S3 20 Cr. 57 (GBD)**

Dear Judge Daniels:

The Government respectfully submits this letter in advance of Willie Evans's sentencing. For the reasons set forth below, Stipulated Guidelines Sentence of 360 months' imprisonment is sufficient but not greater than necessary to reflect the seriousness of his offense, to deter others who might want to join violent street gangs in New York, and to serve the purposes of sentencing.

The defendant was the godfather of a violent gang responsible for scores of acts of violence. He was the godfather for eight years—from 2012 until the date he was arrested. Under the defendant's supervision, the gang was responsible for multiple murders and shootings, and for pouring dangerous drugs into the city. And the defendant was closely supervising these acts of violence. At times he criticized gang members for getting caught on camera before a shooting, and other times, he privately discussed who had advanced knowledge of a slashing. Ultimately, the defendant was the godfather and was in charge of who did what within the gang. He bears enormous culpability and the Stipulated Guidelines sentence accounts for his role in leading the 59 Brims.

## I. OFFENSE CONDUCT

### A. Background

As set forth in the presentence report dated June 22, 2021 (the "PSR"), the 59 Brims (sometimes referred to as "Primetime") are a violent street gang with a national presence and a large number of gang members in the New York City area. (PSR at ¶¶ 40-46.) The 59 Brims were one of the original ten sets formed under the United Bloods Nation ("UBN") on Riker's Island in 1993 by Omar Portee, a/k/a "O.G. Mack." (*Id.*) While the 59 Brims were formed on Riker's Island, the gang has a large national presence, including in California, Georgia, Virginia and North Carolina. (*Id.*) The 59 Brims have many members in Brooklyn, the Bronx, and Manhattan. (*Id.*) The members of the 59 Brims engaged in an array of racketeering activity to further the gang's interests, including acts involving murder and attempted murder; acts involving robbery; narcotics distribution; and acts involving bank fraud and wire fraud.

The 59 Brims, like most other sets of the Bloods in the UBN, have two separate hierarchical rank structures: the "World Wide Lineup," for 59 Brims members in the prison system (often referred to as the "Prison Lineup") and the "World Wide Lineup in the Town," *i.e.*, members of the 59 Brims that are not incarcerated (often referred to as the "Street Lineup"). The Prison Lineup gives orders to the Street Lineup, and the Street Lineup carries out those orders. (*Id.*) Both the Prison Lineup and the Street Lineup follow the below rank structure (in highest rank order):

- "GF" or God Father
- High 020
- Low 020
- 5 Star General/Gangsta[1]
- 4 Star General/Gangsta
- 3 Star General/Gangsta
- 2 Star General/Gangsta
- 1 Star General/Gangsta

**B. The Defendant**

As set forth in the PSR, EVANS was a godfather of the 59 Brims from 2012 to when he was arrested in 2020. During that period, EVANS possessed firearms and sold narcotics, primarily crack cocaine with other 59 Brim gang members. As godfather, he was ultimately accountable for every act of violence of the gang. The PSR notes the following acts:

- On November 29, 2018, after a victim was lured to JERLAINE LITTLE's apartment building, JAMARR SIMMONS and other 59 Brims gang members, including MARKQUEL SIMMONS, MARKELL BOBIAN, TYRONE ERVIN, and SEAN GAMBRELL, robbed the victim at gunpoint and pistol-whipped the victim.

- On March 30, 2019, JAMARR SIMMONS and TIMOTHY COLEMAN committed a stabbing of a rival gang member outside of a bar at 145 East 9th Street in the Bronx. Surveillance video captured COLEMAN and JAMARR SIMMONS committing the stabbing.

- In July 2019, JERLAINE LITTLE was kicked out of the 59 Brims over a dispute with a fellow gang member. Shortly thereafter, LITTLE joined the Mac Baller Brims (a rival gang). **EVANS** ordered members of the 59 Brims to slash LITTLE. JAMARR

---

[1] Some members of the 59 Brims refer to the "General" positions as "Floors," *i.e.*, 5th Floor, Fourth Floor, etc.

SIMMONS and SYLVESTER WINT discussed having Little slashed. Thereafter, members of the gang successfully slashed Little on or about August 8, 2019.

- On August 24, 2019, **EVANS** conspired with WINT and REID to commit a shooting of rival gang members. Shortly after midnight on August 24, 2019, two victims were shot multiple times outside of a bodega (the "Bodega") in front of 755 East 216th Street in the Bronx (both victims survived). Surveillance video captured WINT and REID commit the shooting of the rival gang members. **EVANS**, as the godfather of the 59 Brims, subsequently criticized WINT for letting himself be caught on camera: "Why y'all was walking Back & forth like that Bammy [camera] kaught ya Face Good."

- In the early morning hours of September 28, 2019, JAMARR SIMMONS and MARKQUEL SIMMONS told Bradford Mensah to come to Crotona Park in the Bronx to receive gang discipline from, among others, including **EVANS**, because Bradford Mensah had been seen hugging a former member of the 59 Brims, JERLAINE LITTLE, who had previously been kicked out of the gang. Sometime after Mensah arrived at Crotona Park, he was shot at point blank range in the back of the head and died.[2]

- On January 11, 2020, JAMARR SIMMONS, Jason Parris, DARON GOODMAN, JOSE RODRIGUEZ, and DARNELL COOPER were together on the sidewalk near 1437 Webster Avenue in the Bronx, NY. A rival gang member punched Jason Parris and a fight broke out that continued into the middle of the street on Webster Avenue. While the fight was ongoing in the middle of the street, DARON GOODMAN fired a shot that errantly struck Parris in the throat, killing Jason Parris.

- The defendant possessed firearms and sold drugs with other members of the 59 Brims during.

**C. Evans's Role as Godfather**

Jail calls, text messages, and witness testimony all provide additional color on Evans's role as the godfather in the gang and his managerial role in the gang's violence.

For instance, after the Mensah homicide, Jammar Simmons and Marquell Simmons discussed how many members of the 59 Brims were upset about Mensah's murder in a private chat. Marquell Simmons, for instance, was planning to retaliate within his own gang over the murder of Mensah and actually gave up his leadership position ("u gave up ur lt [lieutenant] spot"). Jamarr Simmons responds that he (Jamarr Simmons) is not going to support Marquel Simmons' decision to go against Evans ("black hat").

[2] The Government understands that a member of Mr. Mensah's family will speak at sentencing.

**Body** Make sure u get this outta ur inbox

**Author** Jamarr Simmons (100041188950274)
**Sent** 2019-10-04 18:26:56 UTC
**Body** U ready to go against da black hat idk wat to tell u

That these members discussed going against the "black hat," *i.e.*, Evans, speaks to Evans's role as the godfather. That any decision about gang violence ultimately reported up to him.

Additionally, after the slashing of Jerlaine Little, discussed above, Evans texted another gang member about the members of the gang that knew about the slashing (the "movie") beforehand:

Only ppl knew about the movie was vesta,Kash & the 2 Pros from web aside from us
Status: Sent
Platform: Mobile

Nah I mean the day everything was set nobody really knew
Status: Sent
Platform: Mobile

Here, where Evans said, "aside from us," he is speaking about himself and another senior member of the gang. This is an example of the hierarchy in place—that Evans may not have been the person who did the slashing, but he knew in advance, was monitoring the act of violence, and even knew who within the gang had advanced warning.

As to the shooting involving Wint and Reid, Evans chastised them after the fact for getting caught on camera "bammy" right before the shooting:

13479514088@s.whatsapp.net Millz Brim
Why y'all was walking Back & forth like that Bammy kaught ya Face Good
Status: Read
Platform: Mobile
8/26/2019 5:03:21 PM(UTC-4)

Source Info:
iPhone/Applications/group.net.whatsapp.WhatsApp.shared/ChatStorage.sqlite : 0x1D2744 (Table: ZWAMESSAGE, ZWAGROUPMEMBER, ZWACHATSESSION, Size: 2088960 bytes)

3

[illegible]@s.whatsapp.net Greenic
Nah it wasn't back n forth
Status: Sent
Platform: Mobile
8/26/2019 5:06:27 PM(UTC-4)

Source Info:
iPhone/Applications/group.net.whatsapp.WhatsApp.shared/ChatStorage.sqlite : 0x1D2866 (Table: ZWAMESSAGE, Size: 2088960 bytes)
iPhone/Applications/group.net.whatsapp.WhatsApp.shared/Library/Preferences/group.net.whatsapp.WhatsApp.shared.plist : 0x4F2 (Size: 8174 bytes)

[illegible]@s.whatsapp.net Greenic
After u see niggas left store spun off
Status: Sent
Platform: Mobile
8/26/2019 5:08:22 PM(UTC-4)

Source Info:
iPhone/Applications/group.net.whatsapp.WhatsApp.shared/ChatStorage.sqlite : 0x1D281E (Table: ZWAMESSAGE, Size: 2088960 bytes)
iPhone/Applications/group.net.whatsapp.WhatsApp.shared/Library/Preferences/group.net.whatsapp.WhatsApp.shared.plist : 0x4F2 (Size: 8174 bytes)

Evans also discussed his role within the gang with Baley at length. Specifically, Evans bragged about giving Baley his role on the council, which consists of the leaders of the various UBN sets. In this chat, he says, he had the "black hat," i.e., the godfather role, since 2012.

13479514088@s.whatsapp.net Marlo

Honestly I truly dnt kare What Skar got to say Hat only reason he Healthy is B kuz the whole P situation 2fase will Neva jack that nigga & yu can send whoever up There to confirm that he only Back kuz of ME & YU not the council yu keep saying noBody kno me then why I'm Still Active Neva Been Faded or Demoted ? why yu I'm only hearing that from yu ? I had the Black Hat since 2012 why no one saying That TIL yu Kame Around I Talk & Broke Bread Witt niggas all over homie Uptop Island ot yu name it it's literally impossible for a Bunch Of niggas to tell yu that unless they not known they self I put on For My Hood & Nation trust me I'll well known & idc Who dnt kno me kuz in the Flesh my Presents is always felt & Trust Hat it ain't jus my circle we talking about the Family Stones UBN our Business is everywhere But the News what yu Did wasn't Brimlike idk why yu making it a thing That whole shit was outta pocket then niggas did that Recording shit That made Not jus Yu Look Bad the Whole 59 Brim that's 13/13 Madd Dogg. that's jus a Facts Of it it's consequence Behind Bad Actions & that's the consequence.

Status: Sent

Platform: Mobile

10/28/2019 11:30:19 AM(UTC-4)

Evans goes on to explain that he (Evans) put Baley up for the chairman spot. Again, this is Evans demonstrating his senior position in the gang.




Finally, in the below chats, Evans and fellow gang member Jose Rodriguez discuss drug dealing at length including where it is getting shipped from and prices.

**Rodriguez**: Yo ptl this n***a not answering nd my brother that i get my s**t from in DR but jeez got someone for 17
**Rodriguez**: And got some dope.
**Rodriguez**: I just haven't seen it pro.
**Rodriguez**: I only deal w one n***a.
**Evans**: Kopy pro send me his #
**Rodriguez**: [telephone number] jeez
**July 8, 2019**
**Rodriguez**: Back in the field with the late night pro.
**Rodriguez**: Few weeks ill have these Ps in
**Evans**: Healthy
**Evans**: What's the #
**Rodriguez**: Rn im getting them 23 fire
**Rodriguez**: In a few weeks cheaper

### D. Guilty Plea and Applicable Guidelines Range

On July 18, 2023, the defendant pled guilty, pursuant to a plea agreement with the Government, to participating in the 59 Brims conspiracy and conspiring in a gang related shooting. (PSR ¶¶ 2-3.) In the plea agreement the parties stipulated that the Guidelines Range was life imprisonment, but because the statutory maximum sentence was 360 months, the stipulated Guidelines Range is 360 months' imprisonment (the "Stipulated Guidelines Range").

The Probation Department recommends a sentence of 360 months' imprisonment: "Although the defendant is a relatively young man, his actions proves to be extremely dangerous and manipulative, having been the godfather of the 59 Brims which 'terrorized' the Bronx. Evans participated in and/or orchestrated numerous robberies, assaults, attempted murders, murders, and narcotic distribution over a lengthy period of time. To punish the defendant, and more importantly protect the community and deter others from involving themselves in similar violent gang activity, we believe that a significant term of imprisonment is warranted." (PSR at 36.)

## II. DISCUSSION

### A. Applicable Law

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After making that calculation, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), which provides that a sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [in the Guidelines];
>
> (5) any pertinent policy statement [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### B. The Court Should Impose a Sentence Within the Stipulated Guidelines Range

The Government respectfully submits that a sentence within at the Stipulated Guidelines Range is appropriate for this defendant.

*First*, the nature and circumstances of the defendant's offense conduct weigh in favor of a Guidelines sentence. The defendant was the godfather of the 59 Brims for eight years, until the

day he was arrested. In that role he oversaw all of the crimes of the gang. He stayed up to date on particular acts of violence. He criticized gang members for getting caught on camera before a shooting. He kept tabs on information flow within the gang. And he was responsible for senior leadership appointments in the gang. This conduct was sustained and incredibly dangerous.

*Second*, a sentence within the Stipulated Guidelines range is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct. A serious sentence is incredibly important here to punish the defendant for such sustained criminal activity over such a long period.

Defense cites to a number of the co-defendants' sentencings in this case. The Government acknowledges that many of the co-defendants received below-Guidelines sentences. However, in the Government's view the co-defendant with most similar culpability was Jamarr Simmons, who received a sentence of 20 years' imprisonment, which was a below-Guidelines sentence. The Government sought a sentence of 25 years' imprisonment for Simmons. Both Simmons and Evans had senior leadership in the gang. But Evans's leadership was far more sustained. He maintained the godfather position for eight years. Accordingly, the Government submits that Simmons is the best comparison of his co-defendants, although Evans has a number of aggravating factors that Simmons did not.[3]

*Third*, the Government recognizes that the defendant lacks any criminal history and accepted responsibility for his role. However, these mitigating factors must be weighed against the breadth of his crimes and put in context. The defendant maintained the rank of godfather for eight years in a violent gang. His lack of criminal history, while mitigating, may also be explained by his role as a manger / supervisor in the gang. It was therefore by design that he was not on the ground personally engaging in discrete acts of criminal conduct. Accordingly, a substantial sentence must account for the defendant's particular role in the gang.

Finally, looking beyond the defendant, in a case like this—where the defendant was involved in a sprawling, violent gang, the need for general deterrence is important. Sentences in this case will send a message to anyone who might consider joining a gang like the 59 Brims that their conduct will be punished, and that they will be held accountable.

## III. CONCLUSION

For the reasons set forth above, the Court should impose a sentence at the Stipulated Guidelines Sentence.

---

[3] The defendant's reliance on Baley's sentence is misplaced. As an initial matter, while Baley sat on the council—he did not have the day-to-day supervision that Evans did. But further still—it was Evans that placed Baley in this role. So Baley owed his leadership role to Evans.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _/s____________________________
Peter J. Davis
Rushmi Bhaskaran
Assistant United States Attorneys
(212) 637-2468 / 2439

cc: Counsel (by ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 20 Cr. 57 (GBD)

WILLIE EVANS,

Defendant. Sentence

------------------------------x

New York, N.Y.
April 30, 2024
10:30 a.m.

Before:

HON. GEORGE B. DANIELS,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
BY: PETER DAVIS
RUSHMI BHASKARAN
Assistant United States Attorneys

ALLEN & OVERY LLP
Attorneys for Defendant
BY: EUGENE INGOGLIA
REBECCA CECCHINI

KOFFSKY & FELSEN LLC
Attorneys for Defendant
BY: BRUCE D. KOFFSKY

(Case called)

MR. DAVIS: Good morning, your Honor. Peter Davis and Rushmi Bhaskaran for the government.

THE COURT: Good morning.

MR. INGOGLIA: Good morning, your Honor. Gene Ingoglia and Rebecca Cecchini of Allen & Overy and Bruce Koffsky.

MR. KOFFSKY: Good morning, your Honor.

THE COURT: Good morning. Has the defendant received a copy of presentence report, and have you had an opportunity to review it with your client?

MR. INGOGLIA: Yes, Judge.

THE COURT: I understand that you had an objection with regard to paragraph 142. You indicated that his mother's deceased, and you wish to change the language to "that she had a drinking problem" rather than "she has a drinking problem."

MR. INGOGLIA: Yes, Judge.

THE COURT: Does the government have any objection?

MR. DAVIS: No, your Honor.

THE COURT: I'll make that change to the report itself. Does the government wish to be heard further on the sentence?

MR. DAVIS: Yes, your Honor. If now is an appropriate time, there's a member of Bradford Mensah's family who would like to address the Court about who Bradford Mensah was and

what he meant to her.

THE COURT: Have I received a written submission?

MR. DAVIS: There's not a written submission, but she would prefer to address the Court orally if the Court would permit.

THE COURT: All right. I'll hear from her briefly. Could you state your name for the record and the nature of your relationship.

MS. MENSAH: My name is Kimberly Mensah. I'm the mother of Bradford Mensah.

THE COURT: Yes, Ms. Mensah.

MS. MENSAH: Good morning.

THE COURT: Good morning.

MS. MENSAH: I don't even know where to begin, but I can tell you Brad was a good boy. Your Honor, there's not one picture that you don't see this boy smiling. He was a happy kid. He brought happiness and joy into my home and into my life. In his teenage years, he started to follow his brother who dropped out of high school, and I refused because then I had mastered being a mother. I pushed him, your Honor. I pushed him. I gave him to the state where there was structure. He could go to school because I worked. I refused to stop working. He went and got his high school diploma. He went and got his home health aide certificate. He worked in a hospice taking care of elderly who were waiting to die, 12, 14 hours a

day. I remember a conversation I had with him when he said he was teaching an older gentleman to play cards. I said, Brad, don't get attached to these people. He said, Ma, I know, but for the little time they have on earth, I'm going to make them happy. That's the kind of kid my son was.

Since September 28, 2019, my life was interrupted and disrupted. I have not been the same since. I have been extremely depressed. I am mentally unstable, and I don't know why. I did nothing to anyone. To this day, I don't even remember two minutes ago. My brain, I am in constant torment. I am in constant torment. I miss my son tremendously. I don't wish this on my worst enemy. The only thing I do right now, your Honor, is exist. I don't even live. I go to work and I come home and I isolate myself. I don't want to speak to people. I don't want to see people, and I don't think it's fair. I try not to even shed a tear in my home because I have a son who is severely depressed except he won't admit it, and that is dangerous. This is my life. This is my life. I don't have a life.

Brad was not a throwaway, your Honor, despite the people he met along the way and became friends with. He was not a throwaway. My son was loved. I taught my son kindness. I raised my boys with kindness. You be kind; that's the way I was raised. Your Honor, if you would have seen the funeral home, it made me happy that he touched so many lives, that the

thing I instilled with him when he walked out the door, he carried that with him. For that, I'm glad Brad was my son. I was handpicked by God to be this boy's mother, and for that I'm grateful. Thank you, your Honor.

THE COURT: Thank you.

MR. DAVIS: Thank you, your Honor, if the government may be heard on sentencing?

THE COURT: Yes.

MR. DAVIS: Judge, I want to start with where Ms. Mensah left off, which is by saying that this Court has lived with this case now for multiple years. This is now the last of 20 defendants to be sentenced. The Court has seen firsthand the violence, the destruction that this gang, the 59 Brims, was responsible for. And what I want to make clear to your Honor is the defendant was the Godfather of this gang for multiple years. He -- what makes his role special is the sustained nature and high-level rank that Mr. Evans had. And so, when we talk about the violence and we talk about the victims of the gang's crimes, Mr. Evans bears enormous culpability for that destruction, enormous culpability. And that is why his guidelines range is of the highest in this case, 30 years. That's a recommendation that the government does not make lightly. It's one that we take seriously. It's one that we think is appropriate in this case, and it's one that we think lines up with relative comparisons of his

codefendants.

So I want to start with the Godfather role. I think there's a little bit I want to say about that because the leadership in the gang is million is somewhat interesting in that we've had a codefendant, Robert Baley, who sat on the counsel of the UBN, which was kind of a group of other Blood sets that had a member or representative. So Mr. Baley, who this Court sentenced earlier in the case, sat on that council. That role as the chairman, the chairman's spot, is different from Mr. Evans's role as the Godfather. It's different in a material way in that, yes, the chairman's spot is someone who sits above all of the gangs and someone who has enormous power in the gang, as we argued to the Court. But the Godfather role that Mr. Evans had had way more involvement in the day-to-day operations of the gang, and what we tried to show in our submission is the certain examples of that involvement.

So starting on page 4 or 5 of our submission, we have text messages that Mr. Evans was responsible for. And in those messages, the Court has seen a little bit of the back story of many of the violent acts that have come before the Court over the course of these multiple years. The first is the slashing of Ms. Little. Evans texted another member of the gang about who within the gang had knowledge about that slashing. That's on page 4. He is explaining that the only people that knew about the slashing, and then he lists the number of people and

us. And that shows his knowledge and awareness of these violent acts, and it shows his culpability for them.

The second is of the shooting that Mr. Wint and Mr. Reid in front of the deli. This is the shooting that both of those defendants have been sentenced for their role in that shooting on the ground. Mr. Evans, after that shooting, criticized those 59 Brims' members. He did that because they were caught on camera. That's how they got caught. And so, he says, Why were you walking back and forth and letting the camera catch you? Again, the importance of why I'm bringing this up is it shows his involvement in these low-level activities. Because he was the godfather, someone of incredibly high rank, he wasn't the person on the ground doing the shooting, but he was someone who was responsible for it. He's culpable for it in a very, very important way.

Lastly, onto the chairman's spot itself. This is Mr. Baley was assigned this chairman role for the UBN, which again is different from the godfather position that Mr. Evans had. Mr. Evans takes responsibility for putting Mr. Baley up for that position, and this is the chat on page 5. He said, I'm the one who put you, Baley, in that role. Again, this underscores the tremendous amount of power that Mr. Evans had in this gang, and what separates Mr. Evans is how sustained it was. He was in this role for eight years, from 2012 until the day he was arrested. And so, what I hope the Court understands

about that is this is the gang that was prolific. The Court has seen many acts of violence, drug dealing, guns, violence. This gang -- there's been two murders before this Court that the gang was involved in, and Mr. Evans was in charge, the godfather, during this time period.

We think for those reasons, your Honor, the sentence that we recommend, the stipulated guidelines sentence is appropriate here. It accounts for these -- this incredible culpability that Mr. Evans has. It accounts for the destruction that the gang has caused, and it accounts for his relative sentencing culpability among his codefendants.

THE COURT: I'm not sure exactly what similarities or distinctions you draw between Mr. Simmons' role, which is the person who received the highest sentence so far, and Mr. Evans' role.

MR. DAVIS: So I think Mr. Simmons, of the defendants who have been sentenced so far in the government's view, is the best comparison for level of culpability. I have a couple of caveats for that. The first caveat is, as the Court might recall, the government asked for a sentence of 25 years in that case. The Court respectfully disagreed with that recommendation and issued a sentence of 20 years. So I want to make sure, as far as the government's viewpoint, the government was asking for a 25-year sentence for Mr. Simmons.

The reason we're asking for a higher sentence here as

for Mr. Evans is the sustained rank that Mr. Evans had compared to Mr. Simmons. Mr. Evans, again, was the godfather role from 2012 to the date of his arrest. That's different from Mr. Simmons' role, who certainly had high rank in the gang and certainly was hands-on in personal acts of violence. We had examples of him participating in particular acts of violence. But we think that the distinction is, again, Mr. Evans' sustained role in this godfather position over the course of nearly over a decade.

THE COURT: When you say "sustained role," did Mr. Simmons have a similar role for a lesser period of time?

MR. DAVIS: Yes. So Mr. Simmons did have a similar role, and he enjoyed enormous rank in the gang. I think at times was a godfather of a particular set, although I would need to check on that. But as far as Mr. Evans being what is called the "black hat" and what he refers to himself as that in his chats, Mr. Evans had that role from 2012 all the way through the date of his arrest.

THE COURT: And Mr. Simmons had that role during what period of time?

MR. DAVIS: I think for a much shorter period of time if my memory is correct, and I think it might have been even a different role. It could have been the godfather of a particular set, a particular part of the Brims, for instance, the Bronx location.

THE COURT: And Mr. Simmons -- given the nature of the role that you're indicating for Mr. Evans, Mr. Evans was not present at most of the actual events that occurred. Mr. Simmons was present at some of those, which ones where you had evidence that Mr. Simmons particularly participated in, particularly murders?

MR. DAVIS: Participated in versus being present at, there's a big distinction here.

THE COURT: Yes.

MR. DAVIS: But as far as being present at, Mr. Simmons was present at both murders. Our understanding is he was present there, and he was also present at the stabbing that he did with Mr. Timothy Coleman and was involved in that stabbing and assault personally. As far as Mr. Evans' presence, Mr. Evans was present in the park, you could say, for the Mensah homicide, so he was present there. As far as his personal presence at other acts of violence, I don't believe I have evidence of his personal role.

THE COURT: When you say he was present, he was present where?

MR. DAVIS: In the park.

THE COURT: In the park, but he wasn't participating in this assault itself?

MR. DAVIS: We're not arguing --

THE COURT: He was observing the assault that he

approved or ordered?

MR. DAVIS: We're not arguing that he was a participant. We're not presenting that to the Court. That's not part of our stipulated facts as to Mr. Mensah. Presence, yes. As far as other -- on that, the defendant did stipulate, and we are agreed, beyond those particular events, that Mr. Evans did possess firearms and deal drugs in furtherance of the gang, and that is undisputed here.

THE COURT: And Mr. Simmons, when you compare Mr. Evans, Mr. Simmons has -- let me make sure I am accurate. Mr. Simmons has a significant criminal history. Is it your position that that criminal history is in relationship to this gang activity that was involved in and pled guilty to, or is that criminal history unrelated or prior to or not in relationship to his involvement in the gang?

MR. DAVIS: So for Mr. Simmons you're asking?

THE COURT: Yes.

MR. DAVIS: So my understanding is that it was not included as relevant conduct; meaning that he got separate points for them and was separate from what he pled guilty to. As far as Mr. Evans, and the government, of course, acknowledges that Mr. Evans does not have that criminal history. We think that's certainly a mitigating factor that the Court can consider, but we would also say the reason is the nature of his role in the gang was not being the person on the

ground committing these crimes with his bare hands. So I think it kind of cuts both ways given that he was in this role for eight years. Thank you, your Honor.

THE COURT: Thank you. Do you wish to be heard on sentence?

MR. INGOGLIA: Yes, Judge. Do you mind if I use the podium?

THE COURT: Yes, please.

MR. INGOGLIA: Your Honor, I along with Bruce Koffsky represent Mr. Evans, and I'm speaking today on his behalf. The first thing I want to say is we accept that the crime is serious and that your Honor will be imposing a serious sentence today. Mr. Evans has accepted responsibility for his conduct. He has apologized to those he has hurt. He understands that he will be receiving a serious sentence, one that, whatever the precise duration, will mean that by the time it's complete, he will no longer be a young man.

What I want to focus on with you today, your Honor, are some factors that, when considered together, support, we submit, our argument that a substantially below what the government is seeking is sufficient but not greater than necessary to serve the purposes of the sentence.

First, our sentencing submission tried to help your Honor see a more complete picture of Mr. Evans than appears in the case. He has family here today supporting him. You

heard -- you had the opportunity to read the letters that they submitted, and our hope was that you got a feel, differently, a more complete picture of Mr. Evans. His help to his family from rescuing his then nine-year-old sister from drowning in the ocean to helping his other sister's business to looking after his little brother during challenging times, of which there are many. You can see the support they are offering to help him keep focused during his time in prison, and a willingness to help him when the day comes that he completes his sentence.

Your Honor also has had the opportunity to read the letter from Mr. Evans himself. I won't repeat that all here, but I suggest it shows someone who is taking responsibility and taking stock. It shows that he has been reflecting on his conduct as probation wrote that they hoped he would, and that he's trying to become and is committed to becoming a better man.

We could debate as a matter of public policy whether our prison system as designed and run truly serves a rehabilitative purpose. But putting that aside, in Mr. Evans' case, this is his first conviction. It is his first experience in prison, these last four years, and that's a lot of time to reflect. And as Mr. Evans' letter shows, he is doing that. And that four years at MCC and MDC, during COVID, during which time he lost his mom and couldn't be with his family to comfort

them and to help them, and everything your Honor knows about the conditions at MCC and MDC, which I won't belabor here but I know you are familiar with; that, those four years have been hard time. And in Mr. Evans' case, he doesn't want to ever do anything that would cause him to return when he completes his sentence. In this case, at least, his first experience of prison has reinforced that he never wants to be back.

And finally, a short word on the other sentences in this case, which I know your Honor is very familiar with. Here is the point: First, those other sentences, those non-guidelines sentences, those were serious sentences. Mr. Wint, who received a seven-year sentence for his use of a firearm in a shooting, that's a serious sentence; Mr. Ingram, who received a 50-month sentence for his senior managerial role in the gang, that's a serious gang; Mr. Markquel Simmons, who received a 75-month sentence for, among other things, his participation in the gang's gunpoint robbery business, that's a serious sentence; and Mr. Goodman, who received a 144-month sentence for his plea to a first-degree murder charge, that's a serious sentence of more than a decade; and finally, Mr. Baley, who Mr. Evans reported to and who, according to the government, "ultimately controls all illegal activity for the gang," he received a 51-month sentence; and Mr. Jamarr Simmons, who had the title of godfather, as your Honor noted, and who had a long and violent criminal history that screamed out for the need for

personal, specific deterrence because all those prior sentences of four years and then seven years had not deterred him; he received an extraordinarily serious sentence of 20 years. I will come back to Mr. Simmons, but the point is simply those are serious, serious sentences. They are punishing. They are deterring. They are sending a message to the broader community, and there is no need for a 30-year sentence for Mr. Evans to achieve those goals.

The second, and hopefully last point, is as you consider these and the other sentences in the case, you don't need a sentence of 30 years to achieve those goals. We suggest you don't need a sentence of 20 years to achieve those goals for Mr. Evans just as you didn't for Mr. Ingram, for Mr. Baley, Mr. Goodman, who all pled to serious crimes and received sentences less than that. Those kind of very serious sentences are sufficient but not greater than necessary, and our argument is the same is true for Mr. Evans.

I know you asked about Mr. Simmons a moment ago when you were having a colloquy with the government and how to distinguish him from Mr. Evans. I will touch on these points. But they both had the godfather title for a different number of years, but they both had the title. Before Mr. Simmons had that title, he had a very senior role in the gang without the title. The specific acts that Mr. Evans pleaded guilty to and acknowledged, most also involved Mr. Simmons. And then,

there's a profoundly different level of need for specific deterrence between the two men. For Mr. Evans, this is his first-time conviction and prison sentence. For Mr. Simmons, he repeatedly returned to crime after being caught and prosecuted and given escalating more severe sentences not once, not twice, not three but four times. And since he has been in jail, Mr. Simmons was involved in violence even after being arrested and imprisoned.

And I think one of your Honor's questions got to this: Our read of the criminal history and the facts of the case suggest that Mr. Simmons -- the level of personal violence by Mr. Simmons himself stands out. The examples of personally stabbing someone, personally arranging a violent robbery, personally stabbing somebody in the jail or being involved in that stabbing. So all of these are different considerations at play with Mr. Simmons, and they are not at issue to the same degree at all well Mr. Evans.

So in conclusion, we accept that Mr. Evans' conduct warrants a serious sentence. Mr. Evans is 32. He knows he is not going to leave prison a young man, but we submit a substantially below guidelines sentence would be sufficient to achieve these goals of sentencing.

THE COURT: Mr. Evans, is there anything you want to say before I impose sentence?

THE DEFENDANT: Yes. Your Honor, I know no form of

apology can change the pain and trauma I caused. I valued the wrong things and made some bad decisions, but I do apologize, your Honor, to you, the courts, and the people I've hurt along the way. Thank you.

THE COURT: All right. I have reviewed the presentence report and accept the factual representations in the presentence report as amended. And the guideline range is calculated as a total offense level 43, criminal history category I. I reviewed the written submissions on behalf of the parties, and I have considered the arguments made today with regard to sentence.

In this case, I think that this offense warrants a serious sentence in relationship to the conduct and the role that this defendant played. In mitigation, I've considered the fact that the defendant's criminal history, although, the government appropriately compares Mr. Evans to Mr. Simmons, who clearly from the information that has been provided to me throughout all of these sentences has indicated that these were likely the most culpable of the defendants and had the highest roles in this violent gang activity. I've considered the other fact that Mr. Simmons had a criminal history category VI, and the fact that Mr. Evans had no criminal convictions. Although, I don't state that to in any way implicate that he has not been seriously involved in criminal activity for a significant period of time, serious criminal activity, even though he does

not have any prior convictions. But his criminal history category is significantly less than Mr. Simmons.

I've also considered the significant fact that the defendant did accept responsibility by his guilty plea and pleading guilty in this case. I've also, in evaluating all the sentences in this case, the numerous sentences in this case, I've attempted to avoid unwarranted sentencing disparity among defendants. But this defendant is among the most culpable, and his role is comparable, if not greater than, the role of Mr. Simmons. That being said, I think it warrants a serious sentence given that he is among the most culpable, and his role is comparable to Mr. Simmons even though Mr. Simmons had a significantly greater criminal history. Their leadership roles are significant here, and this defendant should receive among the highest sentences imposed as a leader of this violent, murderous gang.

So that being considered, I've decided to impose a sentence of 20 years on Count One and a sentence of ten years on Count Two. I have considered that is appropriate, given the serious nature of that sentence, it's appropriate to impose that those sentences run concurrently with each other, particularly given the nature of the activity, the related nature of the criminal conduct that he was involved in, even though none of his criminal conduct resulted in a prior conviction prior to this case. I believe a 20-year sentence on

Count One and a ten-year sentence, the maximum sentence on each count, is the appropriate sentence in this case, particularly to avoid unwarranted sentencing disparities. And given all the factors that I've considered both the mitigation and aggravation of this sentence.

The one thing I should note, I also considered the victim impact. There's no way that a sentence imposed can bring back, or a guilty plea in this case, can undo the significant damage that has been done by this gang under this defendant's leadership. So I will impose the comparable maximum sentence, in relationship to the other defendants, of the 240 months on Count One and the maximum sentence, 120 months, on Count Two to run concurrently. I'll also impose a three-year period of supervised release.

The mandatory conditions of supervision are also imposed. The defendant should not commit another federal, state, or local crime. The defendant must not unlawfully possess a controlled substance. The defendant must refrain from any unlawful use of a controlled substance and submit to at least one drug test within 15 days of his release from imprisonment and at least two periodic drug tests thereafter. Defendant should also cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision as recommended by the presentence report are also imposed with the special

conditions that the defendant shall participate in an outpatient treatment program, which program may include testing to determine whether the defendant has reverted to the use or abuse of drugs or alcohol. The defendant should also participate in the educational, vocational and other employment programs upon his release from his sentence.

The defendant shall submit his person, any property, residence, vehicle, papers or electronic devices to a search on the basis that the probation officer has reasonable belief that there has been a violation of supervised release or unlawful conduct. A search must be conducted in a reasonable time and in a reasonable manner. Defendant shall also not associate with any actor in any way, including through social media websites, with any gang members or associates, particularly any members or associates of any Bloods gang, particularly the 59 Brims or frequent neighborhoods known to be controlled by the Bloods gang or any of its subsets.

Mr. Evans, you have the right to appeal this conviction and sentence to the extent that you've not waived such right at the time of your plea. If you wish to appeal any portion of this conviction or sentence, you should discuss it immediately with your attorney. In order to preserve your right to appeal, a notice of appeal must be filed on your behalf within 14 days of today's judgment.

Anything further by the government?

MR. DAVIS: Just for the record, your Honor, I believe the defendant also has a $200 special assessment.

THE COURT: Yes. I neglected to say I must impose a $100 special assessment for each count for a total of $200.

MR. DAVIS: Your Honor, the government moves to dismiss any open counts against this defendant.

THE COURT: That application is granted.

Anything further from the defense?

MR. INGOGLIA: No, your Honor.

THE COURT: And that's the sentence of the Court.

MR. DAVIS: Thank you, Judge.

THE COURT: You're welcome.

(Adjourned)

o0o

# UNITED STATES DISTRICT COURT

Southern District of New York

UNITED STATES OF AMERICA
v.
Willie Evans

**JUDGMENT IN A CRIMINAL CASE**

Case Number: S7 20-cr-57-03

USM Number: 87822-054

Eugene Ingoglia
Defendant's Attorney

**THE DEFENDANT:**

☑ pleaded guilty to count(s) one (1), two (2)

☐ pleaded nolo contendere to count(s) ____ which was accepted by the court.

☐ was found guilty on count(s) ____ after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1962(d) | Racketeering Conspiracy | 2/18/2020 | 1 |
| 18 U.S.C. § 1959(a)(5) | Attempted Murder in Aid of Racketeering | 8/24/2019 | 2 |

The defendant is sentenced as provided in pages 2 through 8 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) ____

☑ Count(s) all open ☐ is ☑ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

4/30/2024
Date of Imposition of Judgment

George B. Daniels
Signature of Judge

George B. Daniels, U.S. District Judge
Name and Title of Judge

4/30/2024
Date

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Twenty (20) years for Count 1 and ten (10) years for Count 2, to be served concurrently.

☐ The court makes the following recommendations to the Bureau of Prisons:

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ________ ☐ a.m. ☐ p.m. on ________ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ________ to ________

at ________ , with a certified copy of this judgment.

________
UNITED STATES MARSHAL

By ________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Three (3) years.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________________ Date ______________

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## SPECIAL CONDITIONS OF SUPERVISION

Defendant shall complete one drug test within 15 days of beginning supervised release and complete at least two periodic drug tests thereafter.

Defendant shall participate in an outpatient drug treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol.

Defendant shall submit your person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by the person being supervised.

Defendant shall participate in an outpatient psychological treatment program approved by the United States Probation Office.

Defendant shall not interact with anyone from the Bloods gang (or the 59 Brims faction), including on the Internet, nor frequent any neighborhood or area prevalent with Bloods gang members.

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## STANDARD CONDITIONS OF SUPERVISION

As part of your probation, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ______________________ Date ______________

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 200.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until __________. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ __________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: Willie Evans
CASE NUMBER: S7 20-cr-57-03

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ 200.00 due immediately, balance due

☐ not later than ______, or
☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal ______ *(e.g., weekly, monthly, quarterly)* installments of $ ______ over a period of ______ *(e.g., months or years)*, to commence ______ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal ______ *(e.g., weekly, monthly, quarterly)* installments of $ ______ over a period of ______ *(e.g., months or years)*, to commence ______ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within ______ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

**NOTICE OF APPEAL TO THE COURT OF APPEALS FOR THE SECOND CIRCUIT FROM A JUDGMENT OF THE DISTRICT COURT**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

5/3/24 AF

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | } | |
| | } | **Docket No. 1:20-cr-00057-GBD** |
| **v.** | } | |
| | } | **NOTICE OF APPEAL** |
| **WILLIE EVANS,** | } | |
| **Defendant** | } | |

FILED U.S. DISTRICT COURT 2024 MAY -3 AM 11:04 S.D. OF N.Y.

$605.00

Receipt: 28984

Notice is hereby given that Willie Evans, the defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit, from the final judgment of conviction and sentence on Count 1 and Count 2 of the Information entered in this action on the 1st day of May 2024.

Respectfully Submitted,

The Defendant
Willie Evans

Eugene E. Ingoglia
ALLEN OVERY SHEARMAN STERLING US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: 212 610 6300
eugene.ingoglia@aoshearman.com

KOFFSKY & FELSEN LLC
Bruce D. Koffsky
1261 Post Road, Ste. 202B
Fairfield, Connecticut 06824
Telephone: (203) 327-1500
bkoffsky@snet.net
*Attorneys for Defendant Willie Evans*

# U.S. District Court

## New York Southern - Manhattan

Receipt Date: May 3, 2024 11:03AM

WILLIE EVANS

Rcpt. No: 28984 Trans. Date: May 3, 2024 11:03AM Cashier ID: #AF

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|---|---|---|---|---|---|
| 203 | Notice of Appeal/Docketing Fee | | 1 | 605.00 | 605.00 |

| CD | Tender | Amt |
|---|---|---|
| CC | Credit Card | $605.00 |

| | |
|---|---|
| Total Due Prior to Payment: | $605.00 |
| Total Tendered: | $605.00 |
| Total Cash Received: | $0.00 |
| Cash Change Amount: | $0.00 |

**Comments**: 20CV57

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.